## ROY HAHN v. THE STATE.

No. 2774. Decided March 4, 1914.

Rehearing denied April 8, 1914.

**1.—Burglary—Sufficiency of the Evidence.**

Where, upon trial of burglary, the evidence, although circumstantial, was sufficient to sustain a conviction under a proper charge of the court, there was no reversible error.

**2.—Same—Witness Under Rule—Discretion of Court.**

Where, upon trial of burglary, the sheriff of another county from which the case had been transferred on change of venue was upon request of the State excused from the rule, and was permitted thereafter to testify after other witnesses for the State had done so, and there was no abuse of discretion shown, there was no error.

**3.—Same—Evidence—Tracks—Making Tracks.**

Upon trial of burglary, there was no error in admitting testimony as to the tracks found near the place of the alleged burglary, on the ground that the officer forced the defendants to make their tracks on the ground in order to compare them with the tracks already found. Following Pitts v. State, 60 Texas Crim. Rep., 524, and other cases.

**4.—Same—Requested Charge—Tracks—Footprints—Singling Out Testimony.**

Upon trial of burglary where the evidence was circumstantial and there was testimony as to tracks both of horses and men, the court correctly refused to submit a special charge that character of footprints, measurement of tracks and tracks are not of themselves sufficient to support a conviction for burglary; there being other evidence tending to connect defendant with the burglary.

**5.—Same—Witness Under Rule—Bill of Exceptions.**

Where defendant complained that the court erred in excusing a State's witness from the rule, and the bill of exceptions did not show any injury to defendant by reason of the court's action, other than that some other material witnesses testified before the said State's witness, or that he testified to anything than the truth, there was no reversible error, there being no abuse of discretion shown.

**6.—Same—Rule Stated—Discretion of Court.**

The separate examination of witnesses at the trial is a matter within the discretion of the court and will not be reviewed on appeal unless there is a manifest abuse thereof; besides, there is an evident distinction between examining trial magistrates and trials before the District Court which allows dis-

cretion to the latter in enforcing the rule, the statute being directory, and not mandatory in trials in the District Court.

### 7.—Same—Circumstantial Evidence—Sufficiency of the Evidence.

Where, upon trial of burglary, the evidence, although circumstantial, was not only amply sufficient to show that the defendant was guilty, but demonstrated that he, and no other persons, committed the offense, there was no error.

### 8.—Same—Singling Out Testimony—Charge of Court—Tracks.

Upon trial of burglary, where the conviction depended on circumstantial evidence, and a number of links made the chain of circumstantial evidence showing that defendants were the guilty parties, there was no error in refusing a special charge that the footprints and the measurement thereof of both horses' and men's tracks were not sufficient in themselves to warrant a conviction.

Appeal from the District Court of Jones. Tried below before the Hon. Jno. B. Thomas.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*W. J. Arrington* and *J. M. Carter* and *W. F. Ramsey* and *C. L. Black* and *Chapman & Coombes,* for appellant.—On question of tracks and footprints: Meyers v. State, 14 Texas Crim. App., 35; Harrison v. State, 16 id., 325; Gill v. State, 38 S. W. Rep., 190; Grant v. State, 58 S. W. Rep., 1025; Cox v. State, 59 S. W. Rep., 903; Warren v. State, 52 Texas Crim. Rep., 218, 106 S. W. Rep., 132; Yarbrough v. State, 66 Texas Crim. Rep., 311, 151 S. W. Rep., 545.

On question of witnesses under rule: De Lucenay v. State, 68 S. W. Rep., 796; Rummel v. State, 22 Texas Crim. App., 558.

*C. E. Lane,* Assistant Attorney General, for the State.

PRENDERGAST, Presiding Judge.—From a conviction of burglary with the lowest penalty assessed appellant prosecutes an appeal.

There are but few questions raised. One of these is appellant claims the evidence is insufficient to sustain the conviction. We have carefully read and studied the evidence. It is circumstantial. We are not only thoroughly convinced from a study of it that it is sufficient to sustain the conviction, but from it no other reasonable conclusion could be reached than of the appellant's guilt. We think it is unnecessary to recite the evidence. It is quite lengthy. The statement of facts is more than 100 typewritten pages.

The State invoked the enforcement of the rule. The witnesses were thereupon duly sworn and properly instructed by the court. One of the material witnesses for the State was Fred Senter, the sheriff of Stonewall County, in which county the burglary is alleged to have been committed and from which county to Jones County the venue had been changed. The State requested that said witness be permitted to remain in court. The defendant objected to this. The witness remained in

the courtroom and heard the testimony of the other witnesses who testified before he did. The court, in qualifying the bill, stated, in effect, that the rule always obtained in the courts and it was the custom to permit the sheriff to remain in the courtroom, not to be required to go out under the rule, and he followed this custom, stating further, "The court, knowing the high character of the witness, was of the opinion that no injury would be done appellant thereby and that none was done." This court, in a uniform line of decisions, has always held that such matters are committed to the sound discretion of the trial court and that such discretion will be presumed to have been correctly exercised until the contrary is shown. The court did not abuse his discretion in this case. White's Ann. C. C. P., sec. 767, and cases collated thereunder.

About the night of December 13, 1912, the depot building of the Wichita Valley Railroad at Aspermont, in Stonewall County, was burglarized and certain express articles therefrom stolen. The next day after the discovery of the burglary said Sheriff Senter with Mr. Bingham suspected appellant and Don Brewster, who was with him, of the burglary. They found where a buggy and double team had been hitched at a rather secluded place some 100 or more yards from the depot. They tracked two persons from the buggy towards the depot and back to the buggy. One of the horses made a peculiar track which was readily identified. They also found the tracks of these same two parties and said horse and the buggy tracks at a place where a fire had been the night before about a mile and a half from the town of Aspermont, where appellant and said Brewster and this team of horses were seen at this fire early the night of December 13th. They also found these same tracks all—vehicle, horses and persons—at an old rock house about four miles from Aspermont. Both these places where the appellant and Brewster were seen at this fire and the old house were near the road. They suspected appellant and Brewster and watched them the next day. After appellant and Brewster left town, the sheriff and Bingham followed them. They left Aspermont after appellant and Brewster had already gone about one mile. The sheriff and Bingham were on horseback; they rode rapidly until they got in sight of appellant and Brewster. Appellant and Brewster drove rapidly until they got near said old rock house. As they did so, they drove slowly,—in a walk, looking back and evidently discovered the sheriff and Bingham following them. After passing the old house they drove rapidly for some short distance. They were overtaken by the sheriff and Bingham and their buggy searched but the stolen goods were not found therein. They were then discharged and the sheriff and Bingham went back to this old rock house and searched it, finding therein three of the stolen articles. They also discovered the tracks of two persons to and from this old house and the tracks of the buggy and team where they had been hitched in the lane near thereto. Appellant and Brewster, after being turned loose at first by the sheriff, got on an elevation where they could see what the sheriff and Bingham did, and stopped and watched them. As soon as the sheriff

and Bingham found the goods in this old house they went to and arrested appellant and Brewster and brought them back and stopped them opposite this old house. The sheriff then went back to the house and further searched for tracks. Upon discovering them he called to Bingham, who was with appellant and Brewster, and told him to bring the two men to the house, which was done. The sheriff thereupon had both of them to make tracks so that they could be measured. The sheriff then measured their tracks then made, accurately with the tracks he had already found, going to and from this house and they corresponded exactly. He also measured the horse's track at this house where it had been evidently the night before and at the said fire and where the team had been hitched near the depot and they corresponded exactly. He also measured the hoof of the horse itself and it corresponded exactly with these tracks and was the horse that made them.

Appellant has several bills of exception to the testimony of Bingham and the sheriff, Senter, as to these tracks, both of the horse and men, and objected for various reasons, among others, claiming that by the sheriff forcing appellant and Brewster to make their tracks at the old house, while under arrest, it was inadmissible as it was thereby forcing them to give testimony against themselves while under arrest. All this testimony was clearly admissible and has many times been so held in a uniform line of decisions by this court. Pitts v. State, 60 Texas Crim. Rep., 524; Walker v. State, 7 Texas Crim. App., 245; Meyers v. State, 14 Texas Crim. App., 35; Bruce v. State, 31 Texas Crim. Rep., 590, and sec. 1074d, White's Ann. C. C. P.

The court gave a correct and full charge submitting everything aptly that was proper and necessary to be submitted to the jury. Appellant makes no complaint of the court's charge in any respect. He requested, and the court refused to give his special charge to this effect: "That character footprints, measurement of tracks and tracks are not of themselves sufficient to support a conviction for burglary; therefore, you are charged that the evidence of tracking, measuring and comparing the tracks introduced by the witnesses Senter and Bingham and Whitaker, would not of themselves warrant a conviction for the offense charged in the indictment against the defendant." There was much other evidence tending to connect appellant with the burglary in addition to the tracks of himself and Brewster, the horse and the vehicle. It would have been improper for the court, therefore, to have singled out a part of his testimony and given appellant's special charge on the subject. This can no more be done against the State than against appellant. As stated above, the court correctly, aptly and fully submitted a charge to the jury. See White's Ann. C. C. P., sec. 810, and cases there cited.

No other questions are raised to be passed upon. The judgment will be affirmed.

*Affirmed.*

ON REHEARING.

April 8, 1914.

PRENDERGAST, PRESIDING JUDGE.—Appellant files a motion for rehearing and a brief thereon in both this and the companion case of Don Brewster, presenting in this three, and in the Brewster case, two grounds. First, the holding of this court on the question of enforcing the rule; second, that the evidence is insufficient to sustain the verdict; and, third, in refusing appellant's special charge. The latter two questions only, are raised in the Brewster case. The first did not occur therein. So that in the latter two grounds what we say in this applies equally to the Brewster case.

First, did the court commit reversible error in excusing the witness Senter from the rule? This question was sufficiently stated in the original opinion, but, in addition thereto, we now state further thereabouts. In his bills he bases the supposed error on the bare fact that the court erred in excusing Senter from the rule and in not enforcing it as to that witness. The bill does not show that he demanded or in any way sought to have Senter first testify. In the bill he does not show, or attempt to show any injury to him by reason of the court's action, other or further than that three other material witnesses testified before Senter did, if that would show or tend to show any injury. He does not show or attempt to show that the witness Senter was influenced in any way by the testimony of any of these witnesses or that he colored his because thereof, or that he in any way attempted to testify or testified other than the truth, the whole truth and nothing but the truth. The record shows that the Brewster case, at least, had been tried before this time in Haskell County. We take it that there can be no question but that in that trial all these same witnesses and Senter testified therein. While the record does not disclose it, it is not at all improbable that one or both of these appellants were also tried in Stonewall County where the crime was committed and where the indictments were found before the change of venue. Whether either of the appellants were tried prior to this in Haskell County is immaterial. The trial judge in this case and the attorneys must have known what the testimony of Senter and each of the other witnesses had been in the other trial and would be on this. Appellant does not attempt to show that Senter's testimony on this trial was in the slightest or in any material matter different from what it was on any other trial. If there had been any difference, or supposed difference, or Senter in his testimony had been influenced in the slightest by hearing the testimony of the others before he testified, the judge concludes it by his qualification of appellant's bill, which appellant accepted, and, under all the decisions of this court and all the rules he is bound thereby. The court said: "The court, knowing the high character of the witness, was of the opinion that no injury would be done appellant thereby *and that none was done.*"

But because of appellant's persistence in claiming the action of the

court in this respect was reversible error, we will further discuss the question. Every text-book writer whom we have examined—and we have examined a large number,—without any exception, lays down in substance this rule which we quote from 38 Cyc., 1369: "The separate examination of witnesses at the trial is a matter within the discretion of the court which may order witnesses to be separated and examined each out of the hearing of the others. . . . The discretion of the court will not be reviewed on appeal unless there is a manifest abuse thereof." We also cite as holding substantially, if not precisely, the same thing, 12 Cyc., 546; 14 Ency. of Ev., 587; 1 Greenl. Ev., sec. 432; 1 Thomp. on Trials, sec. 275; Underhill's Crim. Ev., sec. 225; 1 Whart. Crim. Ev., sec. 446, and every other text-book writer on the subject. Mr. Wigmore, cited and quoted by appellant on the subject, in effect, says the same thing. He contends, however, that it is the right of an accused and the courts have no discretion, but he concedes that only a few courts so hold. Every decision of this court and of our Supreme Court when it had criminal jurisdiction is to the same effect as the text-books cited above. Buckler, in his Criminal Digest, 2nd vol., p. 1750, says: "Whether or not witnesses will be placed under the rule rests in the discretion of the trial court, which will not be revised on appeal, in the absence of a showing of abuse and injury to the accused." Citing fifteen decisions of this court from the 3rd to the 30th Reports. And on page. 1752, he says: "The admissibility of witnesses who have violated 'the rule,' or who have not been placed under the rule, is within the sound discretion of the court, and such discretion will be presumed to have been correctly exercised until the contrary appears." Citing a large number of the decisions of this and our Supreme Court. To precisely the same effect is Judge White, in his Ann. Criminal Procedure, sec. 767, citing many cases.

But in addition to this, let us go to our own statute and see what it says. In examining trials before magistrates, our statute, article 296, Code Criminal Procedure, says: "The magistrate *shall,* if requested by the accused or his counsel, or by the person prosecuting, have all the witnesses placed in charge of an officer, except the witness who is testifying, so that the testimony given by any one witness shall not be heard by any of the others." Observe the language, the magistrate *shall,*—not *may.* Then go to the other articles of our Procedure on the same subject, we quote all of them:

"Article 719. At the request of either party, the witnesses on both sides may be sworn and placed in the custody of an officer and removed out of the courtroom to some place where they can not hear the testimony as delivered by any other witness in the cause. This is termed placing witnesses under rule.

"Article 720. When witnesses are placed under rule, those summoned for the prosecution may be kept separate from those summoned for the defense, or they may all be kept together, as the court shall direct.

"Article 721. The party requesting the witnesses to be placed under

rule may designate such as he desires placed under rule, and those not designated will be exempt from the rule, or the party may have all the witnesses in the case placed under rule.

"Article 722.  Witnesses under rule shall be attended by an officer, and all their reasonable wants provided for, unless the court, in its discretion, directs that they be allowed to go at large; but in no case where the witnesses are under rule shall they be allowed to hear the testimony in the case, or any part.thereof.

"Article 723.  Witnesses, when placed under rule, shall be instructed by the court that they are not to converse with each other or with any other person about the case, except by permission of the court, and that they are not to read any report of or comment upon the testimony in the case while under rule; and the officer who attends the witnesses shall report to the court at once any violation of its instructions; and the party violating the same shall be punished for contempt of court."  Observe the language in these articles (719).  At the request of either party the witnesses on both sides *may* be sworn and placed in the custody of an officer, etc.  (Art. 721.)  The party requesting the witnesses to be placed under rule *may* designate such as he desires placed under rule and those not designated will be exempt from the rule.

It is a general rule, held so by many of the decisions of this court, that all rules of procedure are directory and not mandatory, unless the language and context show that the Legislature intended that they should be mandatory.  Bizzell v. State, 72 Texas Crim. Rep., 442, 162 S. W. Rep., 861, and cases and text-books there cited and quoted.  Article 58, C. C. P., is:  "All words and phrases used in this Code are to be taken and understood in their usual acceptation in common language, except where their meaning is particularly defined by law."  To the same effect is article 10, Penal Code.  Taking the above statutory enactments, we think it certain that the Legislature intended precisely what they said when they said at examining trials the magistrate *shall* enforce the rule. But in trials before the District Court they confide a discretion to the trial judge and provide that he *may* enforce the rule and not that he is peremptorily required,—*shall* do so.

However, we would not be understood as holding otherwise than that this discretion lodged in the trial courts is a sound judicial discretion and not a personal or arbitrary one, and that in all instances unless good reasons are shown otherwise when the rule is demanded by an accused that the judge should enforce it, and if in this or any other case, it were shown by an accused that the court had abused his discretion and his rights had been injured, we would, in all probability, reverse a judgment of conviction.  But this case shows that the court did not abuse his sound judicial discretion and in addition that no injury whatever was done to the appellant; as said by this court through Judge Hurt in Davis v. State, 28 Texas Crim. App., 542, "to reverse in the absence of probable injury would be contrary to principle."

The evidence in these cases was wholly circumstantial and the court

so charged and gave a correct, full and apt charge on that subject to which there is no objection. We have again carefully reviewed the evidence in these cases. We do not propose to recite all the evidence, nor what the respective witnesses testified. We will merely give a short statement of what the jury were clearly authorized to find and believe therefrom. Most of the evidence, if not all of it, was uncontradicted. Late in the evening of December 13, 1912, appellants, Hahn and Brewster, were seen going towards Aspermont together. They arrived in Aspermont about or just after dark. From time to time during that night until they went to bed in the hotel about 10:30 or later they were seen in various places at different times—not continuously—about Aspermont, always together. They were thus in company with one another all of the next morning and until they started to their homes about fourteen miles distant in a buggy and they were thus together alone in the buggy when they were arrested, charged with this offense. On the night of December 13th the depot building of the railroad there was burglarized. Four different articles were stolen from the house at the time of the burglary. The team driven by appellants, Hahn and Brewster, was a dun team. The horse working on the right had a defective hoof on his right fore foot which made a peculiar track, readily identified and clearly shown. The depot building burglarized was situated about a half mile from the town of Aspermont, there being no inhabitants between the town and depot for that space. There was a mesquite flat, all open country, from the town to the depot. This team was hitched that night in this mesquite flat about 100 or a little more yards from said depot. The tracks of two persons, and only two persons, were shown going from this buggy where hitched towards the depot, and the tracks of those two persons and no other were also found going from towards the depot to the buggy. The tracks of this team and these two men were measured accurately and the tracks of the horse were shown without a shadow of doubt to be made by one of the horses of this team driven by these parties. The men's tracks, going from the buggy towards the depot and returning, were measured and shown to be the tracks of these two persons, Hahn and Brewster, and of no other persons. The said four stolen articles, when stolen, were wrapped up. In the early part of that night by the side of the road about a mile and a half from Aspermont, Hahn and Brewster, appellants, were seen at a fire. The fire was not made from wood but from paper and some clothing. At the time they were seen at this fire this same dun team of their's was standing hitched to the fence. The defective track of this horse was there found and unquestionably identified as that of these appellants' horse. The tracks of two men, and only two men, were found at this fire. They were measured accurately and found without question to be the tracks of these two parties and of no other. The remnant from the fire was examined the next day and portions of an advertisement from a tailor, partially consumed, were found therein. Also some buckles and buttons. These buckles and buttons, doubtless, were the remnant of some of the

clothing, one of the four stolen packages. The part of the advertisement found unconsumed by fire doubtless was inclosed in one of the other stolen articles which was shown to have been shipped from a tailor who made and shipped to Aspermont that article of clothing. The next day three and only three of the stolen articles were found in an old abandoned rock house about three or four miles from Aspermont, without doubt identified and shown to have been three of the said stolen articles. Neither of these articles when found had any paper or wrapping around them. Without question the wrapping that had been around them was the paper that made said fire. The old rock house was a mile or two further from Aspermont than where said fire was on the same road, and both places were on the road from Aspermont to appellants' home. The next day after the burglary the night before, appellants were suspected of the crime. Along in the day they started home together in the buggy drawn by said two dun horses. The officers gave them some little start in advance, intending to pursue and watch them, which they did. Appellants drove rapidly from Aspermont to within a short distance of said old rock house, watching behind them to see if they were pursued, or anyone was in sight. When they neared the old rock house they slowed down to a walk and walked some distance until they got about opposite the old rock house. Seeing the officers approaching and doubtless concluding they were watched and pursued, they again started up and drove a few hundred yards rapidly until they got a few hundred yards past the said rock house. The officers thereupon overtook them and searched their buggy but found none of the stolen articles, then released them. The officers returned to the old rock house. Appellants drove only a short distance from where they were first apprehended by the officers on to a place where they could see the old rock house and the officers' movements thereabouts and they stopped and there watched the officers. Upon returning to the old rock house the officers found the tracks of two men going from the road to the house and returning from the house to the road. Upon searching the old house they then found three of the four stolen articles and seeing these tracks they at once mounted their horses and again went in pursuit of appellants and caught and arrested them. They brought them back to the old rock house. They then made a more careful examination and measurement of the tracks of these two persons that they had found going to and returning from this old house. They also required the appellants each to make tracks again and they were measured and their tracks then made corresponded exactly with these tracks already found and there is absolute certainty that these tracks found by the officers going to and from the old house were the tracks of these appellants and no other person or persons. They thereupon searched for buggy tracks and tracks of the team pulling it and found where this said dun team had been hitched to this fence and then turned around and driven back towards Aspermont. There can be no question from this evidence that these appellants had placed these three stolen

Vol. 73 Crim.-27.

articles in this old house the night before, driving this same team from Aspermont to this point and returning to Aspermont that night.

Appellant sought to show and did show that two other persons were seen in the town of Aspermont late in the evening of the night of the burglary, and had a dun team, but it was demonstrated that that team and neither horse of it, could have made any of the horse tracks that appellants' said horse did make at the various places stated above. They also sought to show and did show, by various witnesses, that they were seen at various places in Aspermont during the night of this burglary. All this for the purpose of showing that they were not the persons who could have committed the burglary and theft, nor were they the persons seen at the fire and who carried three of the stolen articles to the old rock house. All this testimony could have been true and yet the evidence is amply sufficient to show that they could have been seen at the various points where these various witnesses saw them and yet have committed this burglary, been at this fire and carried these articles to the old rock house and been back in Aspermont when they were seen by these various persons.

We again state that the evidence in this case is not only amply sufficient to show that appellants committed this burglary and theft, but that it demonstrates that they and no other person or persons committed it.

This brings us to the last question. Ought appellants' said special charge to have been given? Unquestionably it should not. Their footprints and the measurement of theirs and the horses' tracks was a link in the chain of circumstantial evidence; the chain made up of the whole number of links, unquestionably showed that they were the guilty parties. Appellants' requested charge would pick out one link of this chain of evidence and tell the jury that that alone was not sufficient. If that had been all the evidence, the court should not only have given their requested charge, but should have given a peremptory charge to find the defendants not guilty. If such a charge could even be claimed to be correct in a case like this, likewise the court could have taken up each and every other link in the chain of evidence and by a separate charge, told the jury that that separate link alone was insufficient to sustain a conviction. Such piecemeal charges should never be given in a case like this. The court, under the law, is required to charge the State's theory, based upon the incriminatory evidence just as much so as the appellant is entitled to a charge presenting his matters of defense when sustained by evidence. The court can no more, in one instance than in the other, pick out the several links in the chain of evidence and tell the jury each alone is insufficient to sustain a conviction, or to authorize an acquittal. No case can be found, decided by this court, where the several links in a chain of circumstantial evidence can be separated and a charge given and sustained, telling the jury that that particular link alone would not sustain a conviction. None of the cases cited by appellant so hold. As an illustration: if the court could have singled out the evidence of the footprints and tracks and charged the jury that they alone were in-

sufficient to sustain a conviction, so he could have told the jury that the fact that the depot had been burglarized and certain articles stolen, could not alone sustain a conviction.   And he could likewise have picked out another link,—that these appellants were seen at this fire, alone would not sustain a conviction.   And picked out another link,—that the finding of the three stolen articles in the old house alone could not sustain a conviction.   Such several charges would have been an absurdity. One could be no more given than another, but the court should have charged, as he did, submitting the whole question upon the whole evidence to the jury for a finding.

The motion for rehearing in both cases will be overruled.

*Overruled.*