# APRIL, 1918

Emmett Vestal v. The State.

No. 4847.   Decided February 13, 1918.

Rehearing overruled April 3, 1918.

**1.—Murder—Death Penalty—Sufficiency of the Evidence.**

Where, upon trial of murder assessing the death penalty, the evidence was sufficient to sustain the conviction, there was no reversible error.

**2.—Same—Bills of Exception—Filing—Practice on Appeal.**

Where the bills of exception are filed long after the time the court had allowed for filing them, they will be struck out on motion of the State; however, if considered, there was no reversible error.

**3.—Same—Evidence—Fruits of Crime.**

Upon trial of murder, where the evidence showed that the murder was committed in the act of robbery, and that defendant had pawned a certain watch worn by deceased, there was no error in admitting testimony by the jeweler to whom the defendant had pawned the same; besides, the defendant had admitted this fact, and there was no reversible error. Besides, the bills of exception had not been filed in time.

**4.—Same—Evidence—Identification of Stolen Goods.**

Where, upon trial of murder, the State's testimony showed that the same was committed in the act of robbery, there was no error in admitting testimony by the wife of the deceased that the watch which the defendant had pawned belonged to her husband. Besides, said bills of exception were filed too late. Following Harris v. State, 62 Texas Crim. Rep., 235.

**5.—Same—Witnesses Under Rule—Practice in District Court.**

Where, upon trial of murder, the sheriff had been excused from the rule by both parties, but defendant thereafter complained that the sheriff had consulted with the district attorney and should be placed under the rule, there is no error in the court's refusal to do so under the circumstances surrounding the case; besides, the bill of exceptions was filed too late. Following Hahn v. State, 73 Texas Crim. Rep., 409.

**6.—Same—Separation of Jury—Statement of Facts—Motion for New Trial.**

Where the statement of facts of the testimony of the witnesses heard by the trial court in passing on defendant's motion for new trial on the ground of the separation of the jury was filed after term time the same can not be considered on appeal. Besides, if such statement of facts was considered, it would show no reversible error. Following Reyes v. State, 81 Texas Crim. Rep., 522, 196 S. W. Rep., 532.

Appeal from the Criminal District Court of Dallas No. 2. Tried below before the Hon. C. A. Pippen.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*J. T. Kelly,* for appellant.—On question of separation of jury: Russell v. State, 11 Texas Crim. App., 288; Grissom v. State, 4 id., 374; Kelly v. State, 28 id., 120; Robinson v. State, 30 id., 459; Early v. State, 1 id., 248; Burris v. State, 40 S. W. Rep., 284; Somers v. State, 73 Texas Crim. Rep., 549; Early v. State, 51 id., 382.

*E. B. Hendricks,* Assistant Attorney General, for the State.

PRENDERGAST, JUDGE.—Appellant was convicted of murder and assessed the death penalty.

The main, if not the only, question herein is whether the evidence was sufficient to sustain the verdict. That appellant killed deceased, Roscoe Morrell, was clearly proven, and appellant himself swore he killed him. He claimed he killed him in self-defense. The State's contention, and the evidence as a whole, was amply sufficient to establish that he did not kill him in self-defense, but to rob him.

Deceased was engaged in running a Dodge service car at Weleetka, Oklahoma. Appellant appeared there early in July, dressed in a U. S.

navy uniform, representing that he was working for the United States in the recruiting service. As a matter of fact he was not so engaged, but was a recent deserter from the navy. He hired deceased to take him down into Texas. At the time deceased left with him deceased had, it appears, at least fifty-five dollars, perhaps more. He had one roll of bills besides considerable silver. Appellant at the time knew that he left with some, if he did not know how much, money deceased had. Deceased also took his pistol and watch with him.

They were traced by different witnesses who saw them along the route from Weleetka through Dallas to Lancaster, in Dallas County.

About 11:30 o'clock of the night before deceased's body was found very early next morning appellant, with deceased, drove the car into a garage at Lancaster and had some minor work done on it, and at the time deceased bought and paid for some oil. They remained there only a few minutes, and announced when they left that they might be back a little later, if they concluded not to go on, and get a tank of oil. They left going south. This was just before midnight.

About an hour later appellant returned to Lancaster from the south walking. He met up with the town night watchman and told him he had lost the key to his car and could not start it with his knife, which he had tried. He inquired for a garage where he might get a key for the car. The watchman directed and went with him to the same garage where deceased had had said repairing done, and woke up the boy there, and appellant inquired for a key to the car. The boy had none and refused to go with him to start the car or bring it in. Appellant was very much excited when he saw and first talked with the watchman. When he could get no key for the car he said he was tired and sleepy, and inquired for a hotel. The watchman directed him to one close, but he did not go to the hotel; instead he struck out in the country easterly afoot. About 2 o'clock that night he stopped at a farmer's about a mile and a half from Lancaster, but left the farmer's very early next morning before breakfast, declining to stay to breakfast. About 7 o'clock he reached a town, evidently on the Interurban from Dallas to Corsicana, caught a car and went to Dallas. There he pawned deceased's watch, not in his name but in the name of Taylor, and procured five dollars on it. In his flight attempting to make his get-away he is shown to have gone from Dallas south, stopping for a time at different places, finally reaching Victoria, to which place he was traced, found, arrested and taken back to Dallas.

Just about daylight the morning after they were in the garage at Lancaster, a country boy discovered an empty automobile about a mile and a half south of Lancaster near a stopping place on the Interurban railway. This attracted his attention and he began looking for someone, and discovered some distance off the body of a man dead. This was shown by uncontroverted testimony to be the body of deceased. He gave the alarm. The officers and other persons soon appeared upon the scene. They discovered that the deceased had been shot somewhat in the back of the head behind and near the top of the ear. The ball ranged from the side of entry to the other side of the head but stopped

before emerging. It was extracted by the doctor. This shot killed the deceased. A pool of blood near the automobile was found where deceased's body fell when shot. Appellant picked him up by his feet and dragged the body some distance, and threw it into a ditch beyond a fence in high Johnson grass, where it was almost, if not entirely, concealed from the railroad and the public road crossing it. There was no key in the car, which was necessary to start it. The car was later hauled from where it was found to Lancaster. It was deceased's car. The officers and other citizens searched the car and all around it. They found no whisky bottles anywhere in or about the car. They searched for that purpose. In tracking where appellant had dragged the body they found near the body the knife of deceased closed, not open. Along the same route later in the day the key to the car was found in the dust near where the body had been dragged. The witnesses in describing where they found the knife and key testified that they appeared to have fallen out of deceased's pocket as he was dragged along by appellant. The deceased's suit case was found in the car but open, and the witnesses described the things therein as if they had been pulled out in search of something in it. Deceased's body, the car and surroundings were searched for money. Not one cent was found. The ground at the car and all around and about it was searched for evidence of any struggle or fight between appellant and deceased. No evidence of such a struggle was found. The ground showed no evidence of any struggle whatever. When appellant left the body, returning to Lancaster as stated, he took the watch and pistol of deceased, and must also have taken all of the money that deceased had. And, doubtless, appellant would have taken the car if he could have found or procured a key with which to start it. The evidence would justify the conclusion that appellant would have robbed deceased not only of his pistol, watch and money, but the car also. When arrested the officers found on him the pawn ticket for said watch. He swore that when he left the farmer's that morning he threw the pistol away at a given place. After being arrested he told the officer of this, and went with the officer to the place, found the pistol, which was identified as that of deceased, where he said he had thrown it.

Appellant testified that deceased drank heavily during the whole trip, and especially from the time they reached Dallas to the very time when he killed him. He was in no way corroborated in this by any witness. The proof by the State was to the effect that deceased sometimes drank some, but little at any time, and did not get drunk. Appellant also swore that after they left Dallas before reaching Lancaster, that deceased began cursing and abusing him. The boy at the garage where they stopped just before 12 o'clock testified that deceased was then entirely sober, showed no sign of drinking; that he was right at him, smelled his breath, and that his breath was free from any odor of liquor. That appellant and deceased at that time seemed to be good friends; were sociable and nice to one another.

Appellant's claim further was that just before and when they reached the point where the car was stopped and found next morning, and where

appellant killed deceased, in substance, that deceased was drinking very heavily and very frequently, was drunk, was very abusive of him, cursing and denouncing him in various ways; that something got the matter with the car; they stopped and deceased got out to fix it, and that while out deceased got his pistol and threatened and attempted to kill him; that he knocked him down with his fist, got the pistol away from him and took it himself. That deceased got up and came at him with his open knife in his hand attempting to cut and kill him. That the Interurban car was coming along about this time making considerable noise, and he struck deceased on the head with the pistol in self-defense to keep deceased from killing him with the knife, and that in some way he did not know how, the pistol was discharged. That the noise of the car prevented him from hearing the shot, and he did not know at the time he had shot deceased; that in order to get deceased where he could not be discovered he took him by the feet and dragged him and put his body where it is stated above; that in dragging him along the deceased kicked and holloed at him.

After he had killed deceased he swore that he had written to his father saying: "I am wanted now on a murder charge; have never been caught yet, so don't think hard of me for telling the truth, and pray for me. Don't let this be known, because if I am caught I will be hung sure."

It is not undertaken to give in detail the testimony nor all of the testimony of the various witnesses. However, it is amply sufficient to show without doubt that appellant killed deceased for the purpose of robbing him, and that he did not kill him in self-defense. The evidence is amply sufficient to sustain the verdict.

The court gave a full and complete charge submitting every issue in appellant's favor which was raised by the testimony, to which charge no objection was in any way made.

Appellant has three bills of exception. They were all filed, however, long after the time the court had allowed for filing them. The State makes a motion that they be struck out and not considered because filed too late. The State's motion is well taken, but because this is a death penalty case we have read each of the bills, and if they could be considered they would present no reversible error. The first shows that he objected to the testimony of Mr. Bendel, which was to the effect that he was in the jewelry business, employed by Joseph Samuels Company, who were also conducting a jewelry pawn brokerage business in Dallas; that he had seen the watch which had been introduced in evidence as the deceased's watch, and that he had also seen the pawn ticket therefor; that the pawn ticket was issued by said Samuels firm, and was identified by him as having been issued by said Samuels firm to someone for five dollars borrowed upon said watch. He could not say who pawned it; did not know appellant, and did not know that he had pawned it. The court in allowing this bill qualified it by stating, which was a fact, that appellant while on the stand testified: "I pawned this watch as my property with Joe Samuels under the name of George W. Taylor." Under the facts and record in this case this bill would show no error.

In another bill appellant objected to the testimony of Mrs. Morrell,

the wife of the deceased, where she swore when the watch was shown her and asked whose it was: "It is one just like his" (deceased's), and in further answer to the question: "In your judgment, is that your husband's watch?" she replied: "Yes, sir." This evidence was clearly admissible. Harris v. State, 62 Texas Crim. Rep., 235.

The other bill shows that the sheriff was excused from the rule by both parties when the trial began; that thereafter and after several witnesses had testified appellant objected to the sheriff further remaining in the courtroom, stating to the court that the sheriff was consulting with the district attorney, and thereupon moved the court to place the sheriff under the rule with the other witnesses in the case, which the court refused. The court allows this bill with this qualification: "There was a great crowd present during all the time of the trial of the case, and the courtroom was densely crowded, and in the opinion of the court the presence and the assistance of the sheriff in keeping order and properly controlling the trial of the case absolutely demanded the presence of the sheriff in the courtroom, and for that reason the court exercised its discretion in refusing to have the sheriff of Dallas County placed under the rule." This presented no error. Hahn v. State, 73 Texas Crim. Rep., 409.

The judgment is affirmed.

*Affirmed.*

ON REHEARING.

April 3, 1918.

PRENDERGAST, JUDGE.—Appellant's motion for rehearing is based solely on his contention that a new trial should have been granted because of the claimed separation of the jury pending the trial. This question was not stated or discussed in the original opinion. Appellant had filed no brief in the case. There has been filed in this court a statement of facts of the testimony of all of the witnesses heard by the court in passing on appellant's motion for new trial on the ground stated. No file mark of the clerk of the lower court is shown thereon, although the clerk certifies that it contains a true and correct copy of the statement of facts by the judge in passing on the motion for new trial.

It is well settled that in order to be considered by this court it is necessary that the statement of the evidence heard on such motion shall be filed during the term of court at which the trial occurred. (Reyes v. State, 81 Texas Crim. Rep., 588, where a large number of these cases are collated.) Hence if this statement was filed in the lower court after the adjournment for the term it could not be considered. However, under the circumstances, this being a death penalty case, we have read this statement of facts. It is amply sufficient to show that there was no separation of the jury as contended by appellant in his motion. The trial judge expressly states that he found from this testimony that there was no separation of the jury. It is unnecessary to detail the testimony. So that if this statement was filed after the court had adjourned it could not be considered, and, therefore, no error would be shown by

the court's refusing to grant the new trial on that ground. On the other hand, if it was filed in the lower court in time, then from the testimony heard by the court on the subject he was clearly authorized to find that appellant's claimed separation of the jury was untrue. So that in either event we must hold no reversible error was shown on this ground.

The motion is, therefore, overruled.

*Overruled.*