# JANUARY 22, 1941

## DANIEL O. APODACA V. THE STATE.

No. 21105. Delivered October 30, 1940.
Rehearing Denied January 22, 1941.

The opinion states the case.

*W. Joe Bryan,* of El Paso, for appellant.

*Roy D. Jackson,* District Attorney, and *Harold S. Long,* Assistant District Attorney, both of El Paso, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, Judge.

The offense is murder without malice; the punishment, confinement in the penitentiary for three years.

It was charged in the indictment, in substance, that appellant, while intoxicated, and while operating his automobile on a public highway, through accident and mistake, killed Hector Sandoval, by driving his said automobile against the body of the said Hector Sandoval, etc.

The testimony of the State was to the effect that appellant

was intoxicated when he struck deceased with his automobile. The accident occurred late in the evening. Appellant testified that he had not been drinking since early morning, at which time he drank a small quantity of beer. He denied that he was intoxicated, and introduced witnesses who testified to the effect that he was not under the influence of intoxicating liquor at the time of the accident.

After appellant had been arrested and taken to jail he was required by the officers to submit to certain tests for the purpose of enabling them to determine whether he was intoxicated. According to the testimony of one of the officers, appellant was questioned and his answers reduced to writing. He was also required to walk and make sudden turns. Again, he was required to hold out his hand and make an effort to place a finger on his nose. This he was unable to do. Again, he was required to furnish a specimen of urine, in order that it might be analyzed for the purpose of determining whether alcohol was present. A chemist testified that an analysis of the urine disclosed the presence of alcohol. The officer reached the conclusion from the "intoxication tests" we have described that appellant was under the influence of intoxicating liquor.

Over appellant's proper objection that he had been required to give evidence against himself in violation of Article 1, Sec. 10 of the Constitution of Texas, one of the officers was permitted to describe the tests to which we have referred and to express the opinion, in effect, that appellant was intoxicated. For example, the officer testified that appellant was unable to make a sudden turn after walking as directed by the officers, and, further, that his answers to the questions propounded to him by the officers showed that he was intoxicated. Again, the witness testified that appellant was unable to place his finger on his nose. We think appellant's objection to the testimony should have been sustained. In the Bill of Rights (Article 1, Sec. 10, Constitution of Texas,) it is declared that one accused of crime shall not be compelled to give evidence against himself. Demonstration by an act "which tends to self-incrimination is as obnoxious to the immunity guaranteed by the Constitution as one by words." See Ruling Case Law, Vol. 28, page 434, Sec. 20; Wharton's Crim. Ev., 10th Ed., Vol. 1, page 617, Sec. 315.

We think the record clearly presents the legal question involved. Stated in another way, we are of opinion that it is reflected that appellant was compelled to give evidence against himself. In bill of exception No. 2 it is recited that appellant

was "required to answer questions." We quote from appellant's testimony as follows: "After I was brought into the sheriff's office they took me up in jail. When they first brought me to the sheriff's office they took me to the back end of the sheriff's office. While I was there they caused me to outstretch my hand and then touch the point of my nose. They made me do that two or three times and made me walk fast and slow. After that they made me right-about-face suddenly. Then after they had completed these tests they took me upstairs and took me to the sheriff's office and gave me a Coca Cola bottle so I could urinate in it. After I urinated in it I broke it. I did it intentionally, yes sir. Then they brought me a milk bottle and had me urinate in that and I gave them a small specimen of it. I did that because they ordered me to do it." After describing the tests in question one of the officers said: "Yes. These things were being done under the officers' orders."

We quote from 16 Corpus Juris, Page 566, as follows: "The constitutions of the United States and of most of the states provide in somewhat varying language that no person accused of crime shall be compelled to be a witness, or to give evidence, against himself, and these provisions render inadmissible all evidence incriminating accused and obtained from him by compulsion. The prototype of the guaranty is found in the maxim of the common law, Nemo tenetur seipsum accusare, which was brought to America by our ancestors as a part of their birthright; and the privilege against self-incrimination has been uniformly construed by the courts as giving the citizen protection as broad as that afforded by the common-law principle from which it is derived, both the federal and State constitutions being liberally construed to prevent compulsory self-incrimination. Compulsion is the keynote of the prohibition; and to render evidence inadmissible on the ground that defendant was compelled to produce it against himself, it must appear that such compulsion was used as to rob him of volition in the matter."

The following is taken from 28 Ruling Case Law, supra, Page 434: "The rights intended to be protected by the constitutional provision that no man accused of crime shall be compelled to be a witness against himself are so sacred, and the pressure toward their relaxation so great when the suspicion of guilt is strong and the evidence obscure, that it is the duty of courts liberally to construe the prohibition in favor of personal rights, and to refuse to permit any steps tending toward their invasion. Hence, there is the well-established doctrine that the constitu-

tional inhibition is directed not merely to the giving of oral testimony, but embraces as well the furnishing of evidence by other means than by word of mouth, the divulging, in short, of any fact which the accused has a right to hold secret."

We think appellant's testimony showed in effect that he was compelled to do the things required of him by the officers, and, further, that the testimony of the State was not sufficient to combat appellant's version.

In view of the fact that the issue as to whether appellant was intoxicated was closely contested, we would not feel warranted in holding that the error in receiving the testimony was harmless.

The judgment is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

The State has filed an able motion for rehearing challenging the correctness of the conclusions announced in our original opinion.

We have re-examined the record in the light of the State's motion, and are inclined to adhere to the conclusions heretofore announced.

We think the safer policy to be adherence to the construction and application of Section 10, Article 1 of our Constitution already given effect in our long-established precedents.

We are not inclined to enlarge upon accepted exemptions from the application of said provision of the Constitution.

The motion for rehearing is overruled.