Jack L. SPENCER, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13539.

Court of Criminal Appeals of Oklahoma.

May 5, 1965.

Rehearing Denied Aug. 2, 1965.

Robert O. Swimmer, Oklahoma City, for plaintiff in error.

F. Burck Bailey, Asst. Atty. Gen., for defendant in error.

NIX, Judge:

Jack L. Spencer, hereinafter referred to as the defendant, was charged by Information in the Court of Common Pleas of Oklahoma County with the crime of Operating a Motor Vehicle While Under the Influence of Intoxicating Liquor, and sentenced to Ten Days in the County Jail and to pay a fine of $25.00. It is from this judgment and sentence that he appeals to this Court within the time prescribed by law asserting two assignments of error, as follows:

(1) That the court erred in permitting the showing of moving pictures made of defendant while performing certain tests under direction of police; and

(2) That defendant was refused privilege of calling his doctor for the purpose of obtaining evidence as to whether or not he was under the influence of intoxicating liquor and therefore, denied due process.

It will not be necessary to relate the facts in detail, other than defendant was stopped by the police while driving a motor vehicle upon the streets of Oklahoma City; he was arrested, taken to the police station, and booked for Driving While Intoxicated.

Shortly after he was placed in jail, he was directed to a room and under direction of the police, was requested to perform different acts; such as placing his finger to his nose while his eyes were closed and his head back, walk a straight line, and answer questions. The tests as performed constituted what is known as the "Alcoholic Influence Test".

While performing these various acts, a movie camera, which had been set up in the corner of said room, took pictures of defendant—apparently without his knowledge or consent, or without being advised of his rights against self-incrimination. The moving pictures were introduced in evidence and shown on a screen to the jury. Defendant strenuously objected on the grounds that it violated his constitutional rights.

Defendant contends in his brief that his liberties under the Bill of Rights of the State and Federal Constitution were abridged as he was compelled to give evidence against himself of an incriminating nature. Article 2, Sec. 21, of the Bill of Rights, says, among other things:

"No person shall be compelled to give evidence which will tend to incriminate him, * * *."

The Constitution of the United States and of most of the states provide, in some varying language, that no person accused of crime shall be compelled to be a witness, or give evidence against himself; and these provisions render inadmissible all evidence incriminating accused, obtained from him, by compulsion.

This Court is of the opinion that the objection to the introduction of the motion pictures made of the defendant while performing under the direction of the police, should have been sustained.

This writer is further of the opinion that Article 2, Section 21, supra, which precludes one from being compelled to give evidence against himself is broad enough to include demonstrations or acts which amounts to self-incrimination. It has been held that demonstration by an act which amounts to self-incrimination is as obnoxious to the immunity guaranteed by the Constitution, as one by words. (See Apodaca v. State, 140 Tex.Cr.R. 593, 146 S.W.2d 381; Ruling Case Law Vol. 28, pg. 434 § 20; Wharton's Criminal Evidence, 10th Ed., Vol. 1, pg. 617, § 315.)

The facts leave little doubt that defendant was performing under the direction and command of police officers. Officer Stubbs testified as follows:

"Q. Thank you. Did you place the defendant under arrest?

"A. I did.

"Q. Where was he taken?

"A. To the city police station.

"Q. Where in the city police station?

"A. Fourth floor.

"Q. What took place there?

"A. He was given an alcoholic influence test.

"Q. What tests of a physical kind, what coordination tests was he asked to perform?

"A. The finger to nose test, using the index finger of each hand. (Objection, overruled)

"Q. Officer, would you demonstrate, both by your words and your actions, the instructions that you gave to the defendant the night relative to the finger to nose test?

"A. I gave him a demonstration as to how it was to be done.

"Q. Would you re-enact that and give the instructions by mouth?

"MR. SWIMMER: We ask that all testimony be stricken with reference to any tests.

"THE COURT: Overruled and exceptions allowed.

"Q. Do you understand the question?

"A. No, I don't.

"Q. Would you demonstrate what demonstrations you put forward that night and what instructions you gave to the defendant?

"A. To take this test you stand erect with both arms ourstretched. You lean your head back, looking up to the ceiling. At which time you close both eyes. You take your left index finger and your right index finger and touch the nose with one at a time and stretch your arms back out.

"Q. Did the defendant perform this test?

"A. No.

"MR. SWIMMER: We ask to have the answer stricken as incompetent, irrelevant and immaterial, no proper foundation having been laid as to his qualifications.

"THE COURT: Overruled and allow exceptions.

"Q. What was his behavior in attempting the test?

"A. At the time that he started to attempt this test he was smoking a cigarette, which I asked him to put out and he refused. As he attempted this test he had the cigarette in his hand and instead of using his index finger, he used his thumb. He wouldn't cooperate at all.

"Q. During the time that he was so standing, was his position erect and steady?

"A. No.

"Q. What was his position and behavior?

"A. He was swaying.

"Q. Did you ask him to perform any other physical coordination test?

"A. I did.

"Q. What did that test consist of?

"A. Walking a line, a straight white line.

"Q. How was he instructed to perform this test?

"A. Heel to toe.

"Q. Approximately how long is the line?

"A. Approximately ten foot.

"Q. What color is the line? A. White.

"Q. What kind of floor is it?

"A. Tile, cement tile.

"Q. What is the color of the floor?

"A. Brown. * * *

"Q. What were your instructions as to how he was to perform that test?

'A. He was given a demonstration, placing his right foot on the line, taking his left foot putting his left heel to his right toe and to

proceed walking in the same way to the end of the line, turn and walk back."

It is obvious that defendant was performing under directions and upon instructions of the police.

In 16 Corpus Juris Criminal Law, § 1097, pg. 566, 22A C.J.S. Criminal Law § 649, pp. 539–540, while discussing the Constitutional provisions against self-incrimination, it is stated:

"The prototype of the guaranty is found in the maxim of the common law, Nemo tenetur Seipsum accusare, which was brought to America by our ancestors as a part of their birthright; and the privilege against self-incrimination has been uniformly construed by the courts as giving the citizen protection as broad as that afforded by the common law principle from which it is derived, both the State and Federal Constitution being liberally construed to prevent compulsory self-incrimination. Compulsion is the keynote of the prohibition; and to render evidence inadmissible on the ground that defendant was compelled to provide it against himself, it must appear that such compulsion was used as to rob him of volition in the matter."

The following is taken from 28 Ruling Case Law, supra, pg. 434:

"The rights intended to be protected by the constitutional provision that no man accused of crime shall be compelled to be a witness against himself are so sacred, and the pressure toward their relaxation so great when the suspicion of guilt is strong and the evidence obscure, that it is the duty of courts liberally to construe the prohibition in favor of personal rights, and to refuse to permit any steps tending toward their invasion. Hence, there is the well-established doctrine that the constitutional inhibition is directed not merely to the giving of oral testimony, but embraces as well the furnishing of evidence by other means than by word of mouth, the divulging, in short, of any fact which the accused has a right to hold secret."

The testimony in the case at bar is sufficient to show in effect, that defendant was acting under the compulsion of the police at the time the moving pictures were taken, and, according to defendant's testimony, without his knowledge. The testimony of the state was not sufficient to overcome this version. See, Apodoca v. State, supra; Allbright v. State, 92 Ga.App. 251, 88 S.E.2d 468; Bates v. State, 40 Ala.App. 549, 117 So.2d 258.

Before it can be said that defendant waived his constitutional rights against self-incrimination, it must be shown that the defendant—of his own volition, freely and voluntarily—posed for the pictures after being advised that the tests were optional; and that films were being taken of his actions; and advised as to his rights against self-incrimination.

In absence of such a showing, the pictures admitted in evidence at the trial over objections of defendant, would constitute reversible error.

As to defendant's second contention of error, the evidence is insufficient to bring it under the rule as laid down in the Starrett case [Starrett v. Midwest City], Okl. Cr., 374 P.2d 777. Also, In re Newbern, 175 Cal.App.2d 862, 1 Cal.Rptr. 80, 83, wherein it was said:

"In the case at bar the defendant requests the opportunity to call a doctor of his own choice and at his own expense in an effort to obtain the only evidence that could vindicate him of the charge * * * [t]he refusal to permit him to call a doctor was unreasonable and a denial of due process."

In the case at bar the testimony is not clear that the officers were requested by the defendant to use the phone for the purpose of obtaining a doctor of his choice, at his own expense, for the purpose of a blood

test. Defendant's testimony in that regard was as follows:

"Q. And you asked the officers if you might be permitted to call and talk to your relatives; is that right?

A. That is right. I wanted to call for one reason for my doctor, and I did ask to make the call but they wouldn't hear of it at all.

Q. Would your doctor be the doctor that has performed surgery on you during the past?

A. Yes, sir; not one of the back surgeries, but he is the family doctor that has performed other surgery.

It is obvious that this does not meet the test and is distinguishable from the Starrett and Newbern cases, supra.

Therefore, on the question first herein discussed, this cause is Reversed and Remanded for a new trial. Upon re-trial, any evidence of the films taken of defendant while performing tests under direction of police should be excluded, unless the tests herein set out are met.

BUSSEY, Presiding Judge (specially concurring):

I concur in the conclusion of my learned colleague, Judge Nix, that the case should be reversed and remanded for a new trial.

It is my opinion that in order to render motion pictures of the "Alcoholic Influence Test" admissible, it need only be shown that the tests were performed voluntarily by the accused. If they were performed voluntarily and the officer could describe the conduct of the accused in performing the tests, the motion pictures of the same would be admissible irrespective of whether or not the accused knew that they were being taken. And, conversely, if the tests were performed while the accused acted under compulsion and duress, neither the testimony of the officer nor the motion pictures of the tests would be admissible.

In considering the second assignment of error, while I believe it to be the better

practice for officers of the law to allow the person under arrest the privilege of calling his physician in order to secure a medical examination which might tend to establish his sobriety, I must respectfully disagree with that portion of the opinion that suggests that a refusal to grant such request amounts to a denial of a constitutional right.

TOM BRETT, Judge (specially concurring):

I concur in this opinion, except for the rule laid down with reference to the defendant's second contention of error, which I feel is not properly before the Court at this time.