James Addison SMITH, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–651.

Court of Criminal Appeals of Oklahoma.

July 14, 1975.

Rehearing Denied Aug. 6, 1975.

Jim H. Heslet, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Jahn D. Rohrer, Legal Intern, for appellee.

OPINION

BUSSEY, Judge:

Appellant, James Addison Smith, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, for the offense of Unlawful Delivery of Marihuana, in violation of 63 O.S.1971, § 2–402. His punishment was assessed at a term of five (5) years in the State penitentiary, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Barry Rouw testified he was employed as a Deputy Sheriff for the Tulsa County Sheriff's Office. On August 29, 1973, at approximately 11:00 a. m., he had a conversation with his partner, Willie Anderson. As a result of that conversation, he made preparation to purchase 40 pounds of marihuana. He contacted the Oklahoma State Crime Bureau and the Drug Enforcement Administration of the Federal Bureau of Narcotics for assistance. Deputy Rouw then contacted the Manager of the Trade Winds West Motel

and obtained permission to use rooms 131, 132 and 137. At approximately 2:30 p. m., Gayland Hayes and Larry Bowles, agents of the Oklahoma State Bureau of Investigation and Ed Allcorn, of the Drug Enforcement Administration, arrived at the Sheriff's Office. A description of the defendant was given to the officers. Gary Glanz, a private investigator, volunteered to film the drug transaction, after Deputy Rouw asked to borrow a camera from him. Deputy Rouw further testified that he was located in Room 131 with Officer Larry Bowles. Gary Glanz was located in Room 137. Willie Anderson, his partner, was across the street in a parking lot. Ed Allcorn and Gayland Hayes were in Room 132. At approximately 3:00 p. m., a white male and white female entered Room 132. Shortly thereafter, the male, who Deputy Rouw identified in court as the defendant, and Gayland Hayes left Room 132. After a few minutes, Defendant and Officer Hayes returned to the room. At this point Agent Bowles went to the rear of Room 132, Deputy Rouw went to the front door of the room, and Deputy Anderson came across the street from the parking lot. Officer Hayes then opened the front door and stated an arrest had been made. A burlap bag containing a green vegetable substance was taken into custody. Finally Deputy Rouw identified State's Exhibit No. 2 as a roll of 8 mm. film. The film depicted the defendant arriving at the motel and going into the room. He received the film on September 7, 1973, via mail from Gary Glanz and the film had been in his custody since that time and was unaltered.

Gayland Hayes testified he was employed as an agent with the Oklahoma Bureau of Investigation. He arrived in Tulsa at approximately 3:00 p. m. He went directly to the Sheriff's Office and from there to the Trade Winds Motor Inn located at 1120 East Skelly Drive. He and Ed Allcorn went to Room 132 and shortly thereafter there was a knock at the door. A white female, named Connie, and the de-

fendant entered the room. After an introduction, Agent Hayes stated to the defendant, "Do you want to do some business?" The defendant responded, "How much weed do you want?" Officer Hayes then asked the defendant the price of five pounds. The defendant stated he would take one of the men out to get the "stuff." Agent Hayes and the defendant left the room and proceeded to a white 1960 Cadillac. The defendant opened the trunk of the car and retrieved a burlap sack containing five clear bread sacks containing a green leafy substance. On the way back to the room the defendant stated he liked to drink whiskey and did not smoke marihuana, but had made a great deal of money selling marihuana. After arriving back inside the room, the defendant was placed under arrest. Agent Hayes then identified State's Exhibit No. 1 as the same bags found in the burlap sack. He transported the five bags to the D.E.A. Office in the Federal Building where they were placed in a plastic container and sealed with evidence tape. The evidence was then transported to the Oklahoma Bureau of Investigation where it was submitted to the laboratory.

Gary Glanz, a private investigator, testified he had been involved in photography for approximately 15 years. On August 29, 1073, he arrived at the Trade Winds West Motel and went to Room 137. He used a cartridge type camera that shoots super 8 mm. color film to film the events occurring at Room 132. After shooting the film, it was sent to Kodak where it was processed and returned to him. He then mailed the film to Deputy Rouw at the Tulsa County Sheriff's Office. The film truly and accurately depicts the events that he saw on August 29, 1973, in Room 132. State's Exhibit No. 2, the film, was offered and admitted in evidence.

Don Flynt testified he was employed as a forensic chemist for the Oklahoma Bureau of Investigation in Oklahoma City. He identified State's Exhibit No. 1 as a parcel of evidence that was submitted to

the laboratory on August 29, 1973, by Agent Hayes. The bag with five plastic bags containing a vegetable substance were all enclosed inside the Exhibit. He removed samples from each of the five bags and ran a microscopic identification, modified Duquenois test and chromatography of each item. As a result of these tests, he determined that each of the five samples was Cannabis sativa, marihuana. State's Exhibit No. 1 was then admitted in evidence.

The State then rested.

The defendant then took the stand in his own behalf. He testified that he had been convicted of two crimes, stealing a car in 1945 and grand larceny in 1960. On August 29, 1973, Connie Markham came up to him in the Oklahoma Coffee Shop and asked for a ride to the Trade Winds Motel. Connie placed a burlap bag in the trunk of his car. He then took Connie to the motel. The men in the motel room talked to Connie and not to him. After a short time, Connie asked him to get the sack out of the car. Back inside the motel room someone mentioned something about marihuana. Thereafter, he was arrested. He denied any knowledge of the marihuana or attempting to sell the marihuana.

The defense then rested.

■ Defendant's first assignment of error asserts that State's Exhibit No. 1, the five bags of marihuana, was not properly identified and therefore not admissible.

With this contention, we cannot agree. At page 30 and 31 of the transcript, Officer Gayland Hayes testified as follows:

"Q. Okay. Now, after he was placed under arrest what happened to the sack?

"A. I took custody of the sack.

"Q. And, what did you do with it?

"A. It was marked as evidence and later transported to the OSBI laboratory for chemical analysis.

"Q. Officer Hayes, I now hand you what has been marked for identification as State's Exhibit No. 1, can you identify that, sir?

"A. Yes, sir, this is the same Marihuana—appears to be the same burlap sack, also the plastic sack.

"Q. If you would open that please. Can you tell us what that is, sir?

"A. Yes, sir, this is the burlap sack that was used as the exterior container.

"Q. Is that the one he got out of the trunk?

"A. Yes, sir.

"Q. Okay. What is the next item?

"A. This is the interior brown plastic bag.

"Q. Was that inside the burlap bag?

"A. Yes, sir, it was.

"Q. Are there any more items in the sack?

"A. Yes, sir, these are the same.

"Q. For the record could you describe those last five items?

"A. They are colored and clear plastic sacks containing a green leafy substance.

"Q. And, how do you know those are the same sacks in court today that you received at that time?

"A. My initials and also the date appear on each of the five.

"Q. And, what are your initials?

"A. GCH.

"Q. What date appears on the sack?

"A. This is 8

"Q. What date appears on the sack?

"A. This is 8/29/73.

"Q. And, what did you do with those items after you received them from Mr. Smith?

"A. I transported them to D.E.A. office in the Federal Building where it was placed in this plastic container and sealed with evidence tape and then I transported it to the Oklahoma Bureau of Investigation in Oklahoma City where it was submitted to the laboratory."

The record further reveals that the chain of custody was never broken from the time State's Exhibit No. 1 was seized until it was offered into evidence. It is therefore our opinion that State's Exhibit No. 1 was properly identified and properly admitted into evidence.

Defendant's second assignment of error asserts that the admission into evidence of State's Exhibit No. 2, the film, violated his right against self-incrimination. In support of this assertion, the defendant cites *Spencer v. State,* Okl.Cr., 404 P.2d 46 (1965), where this Court held that films of defendant charged with operating a motor vehicle while under the influence of intoxicating liquor performing "Alcoholic Influence Tests" under the direction of the police, after his arrest and without his knowledge or consent, constituted a violation of Article II, § 21, of the Bill of Rights as compelling defendant to give evidence tending to incriminate himself.

It is our opinion that the instant case is distinguishable from *Spencer,* supra, in that in the instant case the defendant was not performing any tests at the direction of the police, nor was he under arrest. Further, the film revealed the same events that were personally observed and testified to by witness Glanz. We, therefore, find that the film was properly admitted into evidence and did not compel the defendant to give evidence tending to incriminate himself.

Defendant's final assignment of error asserts that it was an abuse of discretion for the trial court to deny his Motion for Continuance. The record reveals that defendant's first trial date was November 13, 1973. Between that date and the date of defendant's trial, March 18, 1974, defendant's trial was continued a total of seven times at the request of the defendant. This Court has consistently held that the judgment of the trial court will not be reversed upon the ground that it refused to grant a continuance, unless it appears that such court had manifestly abused its discretion in refusing a continu-ance. See, *Allen v. State,* Okl.Cr., 507 P. 2d 606 (1973). We find no such abuse of discretion in the instant case.

Finding no error sufficient to warrant modification or reversal, it is our opinion that the judgment and sentence appealed from should be, and the same hereby is, *affirmed.*

BRETT, P. J., and BLISS, J., concur.