BARNEY BLACKSHEAR V. THE STATE.

No. 15649. Delivered March 8, 1933.
Reported in 58 S. W. (2d) 105.

The opinion states the case.

*J. R. Warren, Z. J. Spruiell, Jr.,* and *D. M. Maynor,* all of Tyler, for appellant.

*Nat Gentry, Jr.,* County Attorney of Tyler, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, death.

Viola Brimberry, deceased, and her husband, George Brimberry, lived in a log cabin of two rooms in the East Texas oil fields. On March 21, 1932, deceased was found lying on the floor in a pool of blood. In her left hand was a magazine, and in right hand was a pencil. Written on the magazine were the words "A negro kill me." Near the body was a smoothing iron. George Brimberry was found dead 35 or 40 feet from the house. There were some tracks about 100 feet from his body. These tracks showed to have been made by badly worn shoes which made a peculiar print on the ground. There was a place on the left-hand side of the left shoe that was run over, and there was a small place on the shoe that made each track look like the wearer of the shoe had stepped on a small weed. The tracks led in the direction of the Arp-Henderson highway. Following the tracks, officers found a wrench which was covered with sand and dirt. After following the tracks to the highway, the officers went to Lewistown, where appellant's brother lived. The officers found appellant in his brother's home. He was lying on a pallet asleep. Arousing appellant, the officers found that he had on a shirt, a pair of trousers, and a pair of shoes. The shoes and clothing had splotches of blood on them. The shoes appellant was wearing fitted the tracks the officers had found. The officers testified that the shoes made the same size and kind of tracks they had traced from George Brimberry's body to the highway. The wrench the officers had discovered had hair and blood on it.

In his written statement, appellant declared that he went to the home of the Brimberrys for the purpose of committing robbery; that he enticed George Brimberry away from the cabin and killed him by hitting him over the head with an iron wrench; that he then returned to the cabin and killed deceased by striking her over the head with a smoothing iron; that he took money from the parties amounting to seventeen dollars; that he secured an old magazine and wrote upon it "A negro

kill me," and placed the magazine in the left hand of deceased, and the pencil in her right hand. Further, it was stated in the confession that he (appellant) had become infatuated with a married woman, with whom he had lived for some time; that he had left her, but she had insisted that he come back to her; that he had no money, and committed the murder and robbery for the purpose of securing money.

Appellant did not testify in his own behalf. Some of his witnesses testified that the splotches on the clothing and shoes resulted from the bleeding of appellant's nose. Many witnesses for appellant testified that, in their opinion, he was insane. Other witnesses testified that appellant had made several efforts to take his own life. A mental expert expressed the opinion that appellant was mentally deficient, saying that in his opinion appellant was insane. The state made no effort to controvert the testimony touching appellant's mental condition.

Appellant assailed the confession on the ground that it was involuntary. It appears that appellant had been confined in a dark cell for several days before he made a statement. The only ventilation in the cell came from a small crack under the door. There was no light in the cell. There were no chairs in it, and no bed. A mattress and blanket were on the floor. The cell was in the basement under the steps of the courthouse. There was no way by which appellant could get a drink of water unless it was carried to him by the jailer. There was no commode, and, in order to answer a call of nature, one had to be carried from the cell. One of the officers said: "I suppose you would call it a dungeon. That is what it looks like to me. They have not been two in there since I have been in here. Yes, this man went through solitary confinement for several days and nights. To get water and assistance for calls of nature, the only way he can get assistance is to get in touch with the jailer upstairs with the keys. They work one jailer in the day time and one at night. That building has four stories. The jailer has to attend the whole jail."

After appellant had been confined in this cell for several days and nights, he made a written statement. The officer taking the statement testified that they had to talk to appellant for two hours before he would make a statement. However, he said he did not "put any pressure" on appellant, and that he told appellant he did not have to make a statement. This officer said: "We stayed there talking with him two hours before he was ready to make it. He would not tell it for some time. Yes, he told us time and again he was innocent. I did not believe it. I don't know what Mr. Turner believed. We stayed

there for two hours yes, until he told us he would make a statement." Based on the testimony adduced from the officers, the court submitted to the jury the issue as to whether appellant's confession was voluntary.

The court declined to approve appellant's bill of exception No. 12, with the statement, over the court's signature, that the bill was refused for the reason that it was incorrect. No bill by the court appears in the record. The procedure to be followed by the trial judge when a bill of exception is prepared and presented to him within the time allowed by law for filing it is provided by statute. Where a bill is prepared by the appellant and presented to the trial judge in time, it is his duty, if he does not agree with the correctness of the bill, to file with it a bill which presents the true record. This affords the appellant the opportunity to prepare and file a bystanders' bill. When the trial judge fails to adopt such procedure and files a bill marked "refused," the appellant is entitled to either have the bill considered or have a reversal because it is denied him. It has been the practice of this court under such circumstances to consider the bill. See Rosa v. State, 218 S. W., 1056, and authorities cited.

Considering the bill of exception, it appears therefrom that officers found in one hand of deceased a magazine on which was written the words "A negro kill me." In the other hand of deceased they found a lead pencil. An official of Smith county went to the jail while appellant was under arrest and in custody, and, without warning appellant, had appellant write several specimens of his signature. There was also introduced in evidence appellant's written statement, in which he confessed his guilt. The prosecuting attorney had in his possession a poem written in longhand, entitled "Twenty One Years." This poem was never introduced in evidence and the record is silent as to who wrote it or as to how the state obtained possession of it. The state called and used as a witness one Weaver, a handwriting expert. This witness examined the magazine found in the hand of deceased, the signature to appellant's written statement, the specimens of handwriting taken from appellant without warning, and the poem entitled "Twenty One Years." After his examination of these writings, he testified that the same person who wrote the words on the magazine "A negro kill me" signed appellant's written statement, wrote the poem entitled "Twenty One Years" and signed the specimens of handwriting obtained from appellant while he was in jail. The bill of exception manifests error. In securing the specimens of handwriting from appellant, there was a violation of the provisions

of article 727, C. C. P., which forbids the use of a confession against an accused unless voluntarily made in writing and signed, after a proper warning. Kennison v. State, 260 S. W., 174. The voluntary character of appellant's confession was attacked. If the jury had reached the conclusion that it was involuntary, they were not warranted in considering it for any purpose. Eliminating the confession, the state would have relied entirely upon circumstantial evidence. It was not shown who wrote the poem "Twenty One Years," and it was not introduced in evidence. The proof touching the specimens of handwriting obtained in the jail might alone have driven the jury to the conclusion that appellant wrote the words on the magazine found in deceased's hand. The extreme penalty having been assessed, we would not feel warranted in speculating as to the harmful effect of the illegal testimony.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.