**Clifford OLSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 42416.**

Court of Criminal Appeals of Texas.

Nov. 26, 1969.

Rehearing Denied Sept. 25, 1972.

Darrell C. Morrow (Court-appointed), Travis C. Broesche (Court-appointed), Houston, for appellant.

Carol Vance, Dist. Atty., Phyllis Bell, Frank Price and Bill Burge, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

The conviction is for forgery. Two prior convictions for felonies less than capital were alleged for enhancement. The punishment was assessed at life under Article 63, Vernon's Ann.P.C.

The check as alleged in the indictment was drawn on the special account of Abegg & Reinhold Company in the amount of $121.74, payable to the order of Larry Seibert and was purportedly signed for the company by Howard Young.

The sufficiency of the evidence is challenged. Larry Seibert testified that he met Clifford Olson, the appellant, some two months before the date of the offense. Olson asked him if he wanted to make some easy money by passing some paper (forged checks). Later he saw Olson sign the name of Howard Young to the $121.74 check and four similar checks, and he, Seibert, passed the check at Weingarten's, and he also passed the other four checks he had received from Olson for a total sum of approximately $600.00. He turned all of the money over to Olson who then paid Seibert approximately $37.00.

Two employees of the Abegg & Reinhold Company testified that no person by the name of Howard Young was authorized to sign the company checks. It was shown that one hundred and sixty-five checks similar to the one admitted into evidence were stolen from the company. Linda Green testified that she worked at Weingarten's and cashed the check for Larry Seibert.

Handwriting samples given by appellant were introduced. R. O. Queen testified that he had had forty-one years experience in the field of handwriting analysis and comparison and that the person who signed the name Clifford Olson on the exemplar was the same person who signed the name Howard Young on the check.

The evidence is sufficient to support the conviction. The fourth ground of error is overruled.

In the first ground of error it is contended that error was committed when the trial court admitted into evidence the handwriting samples, because at the time they

were taken Olson was under arrest and did not have counsel present.

The record shows that J. C. Parker who had been employed by the Houston Police Department in the forgery detail took the handwriting samples from Olson in 1963.[1] The exemplars were admitted into evidence over the objection that Parker was not qualified as a handwriting expert. The jury was retired and Olson's retained trial counsel proved that appellant was under arrest when the handwriting samples were made, and that Officer Parker warned him that they would not be used against him on the check he had already written, but that they would or could be used on any future checks he might write; that Olson did not have counsel and was not advised that he could have counsel present at that time. State's counsel elicited from Officer Parker that Olson was not coerced or forced in any way and he voluntarily gave the handwriting sample.

The same question based on substantially the same objection was presented to this Court in the recent case of Burns v. State, Tex.Cr.App., 432 S.W.2d 93, and was answered adversely to appellant. Handwriting samples were taken from Burns by a deputy sheriff during a recess at his trial. When they were introduced an objection was made that he did not have his attorney present when the samples were taken.

This Court held in Burns v. State, supra, that the holding of the Supreme Court of the United States in Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, "made such handwriting 'exemplar' admissible."

Considering the present case in the light of the objection made and the holdings in Gilbert and Burns, supra, there is no reversible error. The first ground of error is overruled.

In the second ground of error, it is contended that reversible error was committed when the exemplar or handwriting samples were introduced, because it alluded to an extraneous offense. From the discussion in Ground of Error No. 1, it can be seen that the proof before the jury was that Officer Parker was in the forgery detail of the Houston Police Department in 1963 and took the handwriting samples from Olson. The record further shows he knew that the signature on the card was that of Clifford Olson.

The above evidence did not show that appellant had committed an extraneous offense.[2] The second ground of error is overruled.

In the third ground of error contention is made that reversible error was committed during the argument of the prosecutor.

There was no timely objection to any of the remarks of the prosecuting attorney.

We note that most of the argument was based on a reasonable deduction from the evidence or was a proper plea for law enforcement. Villarreal v. State, Tex.Cr.App., 440 S.W.2d 74; Perbetsky v. State, Tex.Cr.App., 429 S.W.2d 471, and Henderson v. State, 163 Tex.Cr.R. 573, 295 S.W.2d 215. While some of the argument probably should not have been made, there is nothing presented for review, because there was no timely objection pointing out that part of the argument appellant considered objectionable and nothing is presented for review. Wilson v. State, 163 Tex.Cr.

1. The offense in the present case was alleged to have been committed on the fifth day of September, 1967.

2. An issue of identification was raised when McClure, a witness called by appellant, testified that he saw Merle Bell sign the name of Howard Young to the check along with some twenty similar checks.

Generally, evidence of extraneous offenses cannot be admitted, but where the issue of identity has been raised such evidence may be admitted. See Cedargreen v. State, Tex.Cr.App., 432 S.W.2d 524, and 1 Branch's Ann.P.C.2d, Sec. 188, p. 200, and the authorities cited.

R. 202, 289 S.W.2d 597. When an objection to the argument is made for the first time in an amended motion for new trial, it cannot be considered. Blassingale v. State, Tex.Cr.App., 408 S.W.2d 115; Singleton v. State, 171 Tex.Cr.R. 196, 346 S.W.2d 328.

In 5 Tex.Jur.2d 75, Sec. 44, is found:

"An objection that argument of counsel transcended legitimate bounds should be addressed to the judge, to enable him to counteract any injustice, and to accord the offending counsel an opportunity to withdraw his objectionable remarks. It follows that, unless a timely objection is made below, the appellant will not ordinarily be permitted to complain on appeal of such conduct. * * *"

■■ Generally, to constitute reversible error because of argument of the prosecution there must be a violation of some mandatory statute or some new fact has been injected into the case or the argument must have been manifestly improper and harmful. McMahon v. State, 147 Tex.Cr.R. 508, 182 S.W.2d 712. See Durst v. State, 159 Tex.Cr.R. 466, 265 S.W.2d 118, and Allison v. State, Tex.Cr.App., 248 S.W.2d 147.

■ Complaint is made in the fifth ground of error that the trial court erred at the penalty stage of the trial in permitting the State to introduce four misdemeanor convictions from courts of record and five prior felony convictions in addition to those alleged for enhancement. Article 37.07, Vernon's Ann.C.C.P., specifically provides for the introduction of the prior convictions. Pendleton v. State,

Tex.Cr.App., 434 S.W.2d 694. The fifth ground of error is overruled.

There being no reversible error, the judgment is affirmed. .

## OPINION ON APPELLANT'S MOTION FOR REHEARING

ONION, Presiding Judge.

On rehearing, appellant vigorously asserts this court failed to answer his first ground of error on original submission.[1] He contends that by briefs and oral arguments he has sought to make clear his proposition that the introduction at his 1968 trial of his handwriting exemplars taken in 1963 was in violation of the self-incrimination privilege of the Texas Constitution, Article I, § 10, not that it was violative of the Fifth Amendment, United States Constitution. He recognizes the holding in Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967),[2] which was applied by this court in Burns v. State, 432 S.W.2d 93 (Tex.Cr.App. 1968), both decisions being cited in the opinion on original submission, but argues these cases dealt only with the scope of the Fifth Amendment not the state constitutional provision. He urges that the Texas constitutional provision is broader and more sweeping in scope than that of the analogous provision in the Fifth Amendment.

Appellant advances the argument that in an "imposing series" of opinions, this court, in interpretation of the Texas constitutional provision, has established the principle that any evidence (not merely self-incriminating statements, oral and written) elicited from an accused requiring

---

1. Appellant's brief filed in the trial court shows his first ground of error to be: "The trial court erred in admitting into evidence handwriting samples taken from the Defendant in 1963 in violation of his rights under Article 1, Section 10 of the Texas Constitution."

2. Accord: United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149

(1967); Schoenbrun v. United States, 403 F.2d 56 (5th Cir. 1968); United States v. McGann, 431 F.2d 1104 (5th Cir. 1970); Granza v. United States, 381 F.2d 190 (5th Cir. 1967); United States v. Nix, 465 F.2d 90 (5th Cir. 1972).

volitional participation of the accused which may be deemed self-incriminatory is subject to exclusion. Appellant contends handwriting exemplars require a "volitional act" on the part of the accused, analogous to ". . . any other forced demonstrative action, or to a coerced oral statement or written confession . . ," which are distinguishable from evidence, such as footprints, which can be obtained from the "mere action of others." He concludes the exemplars are "evidence" elicited from an accused which require a "volitional act" and are within the ambit of the state constitutional self-incrimination provision as established by the decisional authority of this court. He cites and relies upon Allison v. State, 423 S.W. 2d 326 (Tex.Cr.App.1968) (driver's license); Trammell v. State, 162 Tex.Cr.R. 543, 287 S.W.2d 487 (Tex.Cr.App.1956) (blood sample); Marshall v. State, 159 Tex.Cr.R. 268, 262 S.W.2d 491 (Tex.Cr. App.1953) (blood sample); Beachem v. State, 144 Tex.Cr.R. 272, 162 S.W.2d 706 (Tex.Cr.App.1942) (speaking certain words for identification under compulsion); Apodaca v. State, 140 Tex.Cr.R. 593, 146 S.W. 2d 381 (Tex.Cr.App.1941) (urine sample, demonstrative acts); Meredith v. State, 73 Tex.Cr.R. 147, 164 S.W. 1019 (Tex.Cr. App.1914) (written instrument).[3]

Although none of these cases dealt with handwriting exemplars as such, appellant strongly contends the opinion on original submission

". . . overruled *sub silentio* a substantial body of cases interpreting the Texas Constitution while in no way indicating that these cases and the principle enunciated therein no longer stand as good law. . . ."

because the opinion constricted the scope of the Texas constitutional provision although ". . . nowhere in their [its] content that the Court's interpretation of the Texas constitutional provision has been changed."

*Is the Texas constitutional provision broader in scope than the Fifth Amendment?* Turning to appellant's argument, we observe that the Fifth Amendment reads:

"No person . . . shall be compelled in any criminal case to be a witness against himself. . . ."

The Texas constitutional provision reads:

"In all criminal prosecutions the accused shall . . . not be compelled to give evidence against himself. . . ."

Appellant urges that the difference in language accounts for our holdings being broader than those of the federal court and that such difference warrants a more sweeping scope being given to the Texas privilege. We have been unable to find any cases by this court where the difference in the language of the two constitutional provisions formed the basis for the decision.

*By using different language, did the framers of Article I, § 10, intend a broader scope for the Texas privilege?* It appears a great variety in the phraseology exists in the various state privileges. Of the forty eight states in the union[4] that have a self-incrimination provision in their respective constitutions, a majority employ the same language as does Texas ". . . to give evidence against himself. . . ."[5] It has been concluded that

---

3. *A*ppellant's reliance upon *Allison* and *Meredith* is clearly misplaced and they are easily distinguishable on the facts. These cases are therefore not hereafter discussed.

4. New Jersey and Iowa are the exceptions.

5. See 8 Wigmore, Evidence § 2252 n. 3, (McNaughton rev. 1961), for the citation of each constitutional provision. Twenty-one states employ the phrase "to give evidence"; fifteen use "witness against himself" (language of the Fifth Amendment); eight use "testify against himself; the last four have miscellaneous provisions. Two states have no self-incrimination provisions in their state constitutions.

"[t]his variety of phrasing, then, *neither enlarges nor narrows* the scope of the privilege as already accepted, understood, and judicially developed in the common law. . . ." (Emphasis supplied) 4 Wigmore, Evidence § 2252, p. 834 (1923).

". . . [N]othing turns upon the variations of wording in the constitutional clauses. . . . It is therefore immaterial that the witness is protected by one constitution from 'testifying,' or by another from 'furnishing evidence,' or by another from 'giving evidence,' or by still another from 'being a witness.' These various phrasings have a common conception, in respect to the *form* of the protected disclosure. . . ." 8 Wigmore, Evidence § 2263, p. 378 (McNaughton rev. 1961).[6]

The United States Supreme Court,[7] as well as state courts (controlled with constitutional provisions similar to our own) that have seriously considered the problem, has adopted this view.[8]

As to the intent of the framers of our present constitution, we observe that no language of the present article incorporating the privilege against self-incrimination, adopted in 1876 and amended in 1918, is the same as the language contained in the Constitution of the Republic of Texas of 1836 which remained unchanged through the state constitutions of 1845, 1861, and 1869. The available evidence, admittedly scant, indicates that the self-incrimination privilege was never debated during the constitutional convention of 1875.[9] It would appear that the framers of the present constitution merely lifted the exact language from earlier constitutions without any consideration of the import of the language. We have made a diligent effort to find something in our state constitutional history to shed light on the meaning of the self-incrimination provision.[10] Our efforts have uncovered nothing to indicate we should accord the phrase "to give evidence" any particular significance, and certainly we have found no support for the position that the phrase "to give evidence"

6. See also Weintraub, Voice Identification, Writing Exemplars and the Privilege against Self-Incrimination, 10 Vanderbilt L.Rev. 485–490, n. 22 (1957).

7. Schmerber v. California, 384 U.S. 757, 761, n. 6, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

8. In the following decisions, the court rejected the argument that "to give evidence" under their respective state constitutions indicated a broader scope than the federal provision. State v. White, 102 Ariz. 162, 426 P.2d 796, 797 (1967); State v. Smith, 8 Terry 334, 91 A.2d 188, 192 (Del.Super.1952); Opinion of Justices, 255 A.2d 643, 650 (Me.1969); Walton v. City of Roanoke, 204 Va. 678, 133 S.E.2d 315, 318 (1963); State v. Moore, 79 Wash.2d 51, 483 P.2d 630 (1971).

Contra: The dissenting opinion in State v. Robinson, 23 Utah 2d 78, 457 P.2d 969, 970–971 (1969), said the term "evidence" seemed to be "broader." The statement made indicated no awareness of the overwhelming view to the contrary. Wells v. State, 20 Ala.App. 240, 101 So. 624, 625 (1924), also indicated a view contrary to the majority. Weintraub,

supra, n. 22, shows this view to be erroneous.

9. No official report of the debates of the Constitutional Convention of 1875 was kept. The only source as to the debates is contemporary newspaper accounts. These accounts are compiled in Debates in the Texas Constitutional Convention of 1875 (McKay Ed.1930).

10. In the 1875 convention, the present language was reported by the committee on the Bill of Rights less than one month after the convention convened, indicating that there was little or no discussion of the self-incrimination provision. Journal of the Constitutional Convention of the State of Texas, September 6, 1875 (1875) at 271–73.

In the first state constitution, the present language was likewise reported from committees shortly after the convention began—*seven days*. Journals & Debates: Texas Constitution 1845 at 32–34.

We also find no discussion of the privilege in the constitutional proceedings surrounding the Republic of Texas. Journal of the Proceedings of the General Council of the Republic of Texas—San Felipe de Austin, November 14, 1935 (Ed.1939).

was meant to be more encompassing than "witness against himself," as contained in the federal constitution.

■ It would, thus, appear that Article I, § 10, is declaratory of the common law, comparable in scope to the Fifth Amendment, both provisions having a common ancestry. See "Interpretive Commentary" to Article I, § 10, Texas Constitution, Vernon's Ann.Tex.Const.

Of course, the history of the privilege does not finally settle its scope or policies and the strength of these underlying policies will largely determine whether future construction will be restrictive or expansive.[11]

■ While federal constitutional safeguards applicable to the states do establish a minimum standard for state courts, such courts are not limited to those standards in construction of federal or state rights. They may go further and provide greater safeguards. As to the outer reaches of "due process" or "self-incrimination," we give great weight to the reasoning and holdings of the United States Supreme Court. Nevertheless, as to the true scope of the Texas Constitution, we must ultimately follow our own lights. "This approach is more desirable than simply second-guessing future supreme court deci-

sions." Baernstein, Criminal Law and Procedure, 21 S.W.L.J. 237, 241 (1967).

Nevertheless, we have found no historical evidence for appellant's position that the framers of our state constitution meant, by choice of language, for Article I, § 10, to be more encompassing than, "witness against himself," as used in the federal constitution or other formulations of the privilege then in existence in other states.

We, thus, reject appellant's initial argument.

*Has this court, however, given a broader interpretation to our state constitutional provision than has been accorded the corresponding federal constitutional proviso?*

In light of the cases relied upon by the appellant, we conclude we must review appellant's ground of error in some detail, particularly since most of the decisions relied upon dealt with the state constitutional provision and were handed down prior to the decision in Malloy v. Hogan, 378 U. S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).[12] The Fifth Amendment did not apply to the states prior to *Malloy*.[13] Thus, pre-*Malloy* questions as to the scope of "self-incrimination" provisions were wholly matters of state law.[14] *Malloy* ended this di-

---

11. Only recently, the late Mr. Justice Harlan stated: "The point I draw from the Schmerber approach to the privilege is that '[t]he Constitution contains no formulae with which we can calculate the areas within this "full scope" to which the privilege should extend, and the Court has therefore been obliged to fashion for itself standards for the application of the privilege. . . .'" California v. Byers, 402 U.S. 424, 449, 91 S.Ct. 1535, 1548, 29 L.Ed.2d 9 (1971).

As to the apparent conflict in the Supreme Court decisions, Mr. Justice Harlan " . . . perceive[d] in these cases the essential tension that springs from the uncertain mandate which this provision of the Constitution gives to this Court. Id. at 402 U.S. at 450, 91 S.Ct. at 1548. And, the opinions " . . . attempting to capture the 'purposes' or 'policies' of the privilege demonstrate the uncertainty

of that mandate. . . . " Id. at 402 U.S. at 450, 91 S.Ct. at 1549.

12. See also Murphy v. Waterfront Comm. of New York Harbor, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964) ; California v. Byers, supra; Schmerber v. California, supra; Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966).

13. In Twining v. New Jersey, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97 (1908), the Supreme Court had proclaimed the Fifth Amendment privilege against self-incrimination applied only to the federal government. See also Adamson v. California, 332 U.S. 46, 67 S.Ct. 1672, 91 L.Ed. 1903 (1947).

14. Of course, the outer limitation of the Fourteenth Amendment "due process" clause did exist. See, e. g., Breithaupt v.

versity of viewpoints by superimposing Fifth Amendment standards as constitutional minimal applicable to each state. It is unquestioned, however, that both before and after *Malloy*, the states had and have plenary power to enlarge constitutional guarantees on the basis of state law.

This appeal, then, presents the rather rare situation in which the decisions of this court construing the self-incrimination provision of Article I, § 10, of the Texas Constitution have supposedly accorded the accused in a criminal proceeding substantially greater protection than he possesses under controlling Fifth Amendment principles. Not surprisingly, it is on Texas law which appellant has rested his case, and were the precedents on which he relies allowed to remain fully authoritative, his argument might be persuasive.

To put the question presented in the instant appeal in a proper perspective, it may be useful to note that the overwhelming number of decisions dealing with the scope of Article I, § 10, regarding the types of physical evidence that may be compelled from the accused have not been overly troublesome. The following list, although not exhaustive, refers to the types of evidence which have been compellable from an accused consistent with the Texas self-incrimination provision: footprints,[15] fingerprints,[16] physical examination for venereal disease,[17] fluoroscopic examination followed by an enema,[18] examination of the tongue,[19] removal of scrapings from the fingernails,[20] paraffin test,[21] requiring an accused to try on clothes both at the scene[22] and before the jury,[23] requiring an accused to stand at a line-up,[24] requiring a defendant to raise his deformed hand for identification purposes before the jury[25] and requiring an accused to put on clothes and speak before the jury.[26]

Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957); Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

15. Walker v. State, 7 Tex.App. 245, 264–267 (Tex.Ct.App.1879) (by implication); Pitts v. State, 60 Tex.Cr.R. 524, 132 S.W. 801 (Tex.Cr.App.1910); Hahn v. State, 73 Tex.Cr.R. 409, 165 S.W. 218, 220 (Tex.Cr.App.1914).

16. Texas Constitution: McGarry v. State, 82 Tex.Cr.R. 597, 200 S.W. 527, 528 (1918); Conners v. State, 134 Tex.Cr.R. 278, 115 S.W.2d 681 (1938); Mendez v. State, Tex.Cr.App., 362 S.W.2d 841 (1962); Bonner v. State, Tex.Cr.App., 375 S.W.2d 723 (1964); Harrington v. State, Tex.Cr.App., 424 S.W.2d 237, 242 (1968); De La Rosa v. State, Tex.Cr. App., 414 S.W.2d 668 (1967); Travis v. State, Tex.Cr.App., 416 S.W.2d 417 (1967); Gordon v. State, Tex.Cr.App., 461 S.W.2d 415 (1971).
See also Tea v. State, Tex.Cr.App., 453 S.W.2d 179 (1970); Martin v. State, Tex.Cr.App., 463 S.W.2d 449 (1971); Rinehart v. State, Tex.Cr.App., 463 S.W. 2d 216, 219 (1971); Williams v. State, Tex.Cr.App., 461 S.W.2d 614, 618 (1970); Simmons v. State, Tex.Cr.App., 457 S.W.2d 284 (1970); McKenzie v. State, Tex.Cr.App., 450 S.W.2d 67 (1969); Price v. State, Tex.Cr.App., 449 S.W.2d 73 (1969).

17. Martinez v. State, 96 Tex.Cr.R. 138, 256 S.W. 289, 291 (Tex.Cr.App.1923).

18. Ash v. State, 139 Tex.Cr.R. 420, 141 S.W.2d 341 (Tex.Cr.App.1940).

19. Richardson v. State, 159 Tex.Cr.R. 595, 266 S.W.2d 129 (Tex.Cr.App.1954).

20. Coleman v. State, 151 Tex.Cr.R. 582, 209 S.W.2d 925, 927 (Tex.Cr.App.1948).

21. Henson v. State, 159 Tex.Cr.R. 647, 266 S.W.2d 864, 868 (Tex.Cr.App.1953).

22. Issac v. State, 421 S.W.2d 661, 663 (Tex.Cr.App.1967).

23. Rutherford v. State, 135 Tex.Cr.R. 530, 121 S.W.2d 342 (Tex.Cr.App.1938); Long v. State, 120 Tex.Cr.R. 373, 48 S.W. 2d 632 (Tex.Cr.App.1932), overruling Turman v. State, 50 Tex.Cr.R. 7, 95 S.W. 533 (Tex.Cr.App.1906). See Note, 11 Tex.L.Rev. 127 (1932).

24. Bruce v. State, 31 Tex.Cr.R. 590, 21 S.W. 681 (Tex.Cr.App.1893) (alternative holding).

25. Whitlock v. State, 170 Tex.Cr.R. 153, 338 S.W.2d 721 (Tex.Cr.App.1960).

26. Benson v. State, 69 S.W. 165 (Tex.Cr. App.1902). Cf. Taylor v. State, Tex.Cr. App., 474 S.W.2d 207 (1971) (requiring defendant to speak after taking the stand: no *Beachem* error on grounds of

In contrast to these personal intrusions, which are not privileged, appellant claims handwriting exemplars are protected by a construction of our decisional law.

Although no cases have been cited, we have diligently searched to determine if this court has previously held that the taking of handwriting exemplars violated the self-incrimination privilege of the state constitution. We have found no such decisions.

In Bell v. State, 99 Tex.Cr.R. 61, 268 S. W. 168 (Tex.Cr.App.1925), the defendant had signed a document before a grand jury which was subsequently introduced at the trial for proof of handwriting. The decision unequivocably repudiated as "untenable" the contention that requiring the handwriting exemplars might be considered as compelling the accused "to give evidence against himself" in violation of the state constitution.

In Long v. State, 120 Tex.Cr.R. 373, 48 S.W.2d 632 (Tex.Cr.App.1932), reversed on other grounds, this court did discuss the handwriting exemplars and the self-incrimination privilege. There Long voluntarily took the witness stand in her own behalf. She was then required to write her name for the purpose of comparison. It was there held that by testifying, the defendant had waived the self-incrimination privilege and could be required to give manual demonstrations. The question, thus, raised by the case, is whether the privilege of self-incrimination, absent a waiver, would exist as to the taking of handwriting exemplars. The inference is there, but the court did not discuss it. See Comment, 11 Tex.L. Rev. 127 (1933). *Cf.* Hamilton v. State, 397 S.W.2d 225 (Tex.Cr.App.1966); Key v. State, 149 Tex.Civ.App. 200, 192 S.W.2d 563, 566 (Tex.Cr.App.1946). It is obvious that the court utilized the waiver theory without addressing itself to the basic question.

In dealing with the question presented, it is discovered that one constant source of confusion in Texas self-incrimination cases is the number of cases which have interwoven both the constitutional prohibition and the statutory inhibition concerning confessions into an almost unintelligible maze.[27] As shall be seen, the *Beachem*

waiver); Key v. State, 149 Tex.Civ.App. 200, 192 S.W.2d 563, 566 (Tex.Cr.App. 1946).

27. Appellant does not raise the question that the exemplar in the instant case constitutes a "confession" within the meaning of Article 38.22, Vernon's C.C.P. It is observed that the question of whether testimony concerning an accused's handwriting executed while in custody constituted a "confession" has arisen on several occasions in early cases. Williams v. State, 27 Tex.App. 466, 11 S.W. 481 (Tex.Cr.App.1889); Hunt v. State, 33 Tex.Cr.R. 252, 26 S.W. 206 (Tex.Cr. App.1894), and Ferguson v. State, 61 Tex.Cr.R. 152, 136 S.W. 465 (Tex.Cr. App.1911), held the handwriting samples introduced were not construed as confessions in violation of the statute although the defendants were in custody at the time. See also Moore v. State, 85 Tex.Cr. R. 573, 214 S.W. 347 (Tex.Cr.App.1919). *Williams* had signed a motion for continuance, and, like *Hunt*, had signed applications for the attachment of witnesses. *Ferguson* had signed an appearance bond. These signatures were used for comparison with bills of sale in these theft cases (*Williams* and *Ferguson*) and incriminating letters in *Hunt*, a murder case. Relying on *Hunt*, *Williams* and *Ferguson*, the court, in Jones v. State, 73 Tex.Cr.R. 152, 165 S.W. 144 (Tex.Cr. App.1914) (a bigamy case), found no error in the admission of copies of a letter the sheriff had the defendant make while in custody as proof of handwriting.

The stage was, thus, set for Kennison v. State, 97 Tex.Cr.R. 154, 260 S.W. 174 (Tex.Cr.App.1924), noted in 3 Tex.L. Rev. 485 (1925). While in jail, *Kennison* was taken to the county attorney's office and directed to give handwriting specimens. Over objection that he was at the time under arrest and not warned, such specimens were used at his trial for handwriting comparison. There was a claimed violation of the confession statute, now Article 38.22, Vernon's Ann.C.C.P.1965, as amended 1967, formerly Article 727, Vernon's Ann.C.C.P.1925, and then Article 810, Vernon's Ann.C.C.P.1911.

case relied upon by the appellant is an interesting variation of this phenomenon. The exclusionary rule concerning coerced or involuntary confessions has a separate history covering a different period of time than the self-incrimination privilege. While there is an underlying relationship between the two, the original designs were different. Unfortunately, courts have sometimes applied the two rules without making any distinction between them. See Comment, 21 Tex.L.Rev. 816, 817 (1942).[28]

Although there are no cases expressly supporting appellant's contention, he claims handwriting exemplars are analogous to the three areas where significant physical evidence has been held to be protected by Article I, § 10, of the state constitution—urine specimens (Apodaca v. State, 140 Tex.Cr.R. 593, 146 S.W.2d 381 (Tex.Cr. App.1941)); voice exemplars (Beachem v. State, 144 Tex.Cr.R. 272, 162 S.W.2d 706 (Tex.Cr.App.1942)), and blood tests (Trammell v. State, 162 Tex.Cr.R. 543, 287 S.W. 2d 487 (Tex.Cr.App.1956)—none of which are within the ambit of the Fifth Amendment.[29]

*Apodaca* supra,[30] involved a prosecution under Article 802c, Vernon's Ann.P.C. (murder without malice while driving

In reversing, the court cited Branch's Ann.P.C. and other authorities for the proposition that acts as well as verbal statements came within the confession statute. The court said: "In the instant case the writing is secured not from an impulse moving from accused, but from the representatives of the state; they inaugurated the proceedings and directed him to write. . . ." 260 S.W. at 175.

The *Kennison* court questioned and purportedly overruled the *Jones* case, supra, as being "out of harmony" with the construction given the confession statute. Noting that proof of compelled footprints had long ago been accepted as an apparent exception to the confession statute, the court sought to distinguish *Williams*, *Hunt*, and *Ferguson* on the ground that those cases involved signatures on papers in preparation of trial and there was no apparent connection between the signing of such papers and the prosecution.

The distinction has been characterized as "clearly unsound," although it was recognized in a later case, Rose v. State, 124 Tex.Cr.R. 377, 62 S.W.2d 121 (Tex. Cr.App.1933), 1 McCormick & Ray, Evidence § 431 n. 50, p. 363. And, *Kennison* was expressly followed in Click v. State, 119 Tex.Cr.R. 118, 44 S.W.2d 992 (Tex.Cr.App.1931) and Blackshear v. State, 123 Tex.Cr.R. 111, 58 S.W.2d 105 (Tex.Cr.App.1933). In Bell v. State, 99 Tex.Cr.R. 61, 268 S.W. 168, 169 (Tex. Cr.App.1925), the court failed to find the *Kennison* requirement an "apparent connection" between the standard obtained and the charge against the defendant.

In referring to the *Kennison* line of cases, *Wigmore* has said that Texas stands alone in this "heresy" that handwriting exemplars constitute confessions.

As to waiver, see Hamilton v. State, 397 S.W.2d 225 (Tex.Cr.App.1966). Note further that *Ferguson* was cited with approval in Jones v. State, 156 Tex.Cr.R. 475, 243 S.W.2d 848 (Tex. Cr.App.1951).

It should be borne in mind that the *Kennison* case did not mention either the Fifth Amendment or the Texas constitutional provision as to the privilege against self-incrimination, but reached its results strictly on the basis of a violation of the confession statute. See 3 Tex.L.Rev. 483 (1925).

28. The connection of the privilege and the confession rule has been termed a "shotgun wedding," Herman, The Supreme Court and Restrictions on Police Interrogations, 25 Ohio St.L.J. 449, 465 (1964); as without historical justification, 3 Wigmore, Evidence § 823 (3d ed. 1940), at p. 249; and bad policy to boot, Justice White, dissenting in *Miranda*, 384 U.S. at 526–531, 86 S.Ct. 1602, 16 L.Ed.2d 694. See generally, 3 Wigmore, Evidence § 823 n. 5 at p. 339 (Chadbourne rev. 1970).

29. Urine specimens: Davis v. District of Columbia, 247 A.2d 417 (D.C.App.1968); United States v. Nesmith, 121 F.Supp. 758, 762 (Dist.Ct., D.C.1954); Voice examplars: United States v. Wade, 388 U.S. 218, 223, 87 S.Ct. 1926, 1930, 18 L.Ed.2d 1149, 1155 (1967); Blood tests: Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

30. Noted in 19 Tex.L.Rev. 480 (1941); 26 Wash.L.Q. 435 (1941); 15 U. of Cinn.L.Rev. 344 (1941). See also Criticism of Apodaca in 1 McCormick & Ray, Evidence § 431 (2nd ed. 1956).

while intoxicated). After being taken to jail following the fatal wreck, the accused was required to perform an "intoxication" test involving simple motor functions—to walk, make sudden turns, extend the hands, place a finger on his nose. Further, the officer obtained a urine specimen over Apodaca's objection. The trial court's rulings would appear to have been correct for prior to 1940 this court, at least impliedly, espoused the theory that the privilege was intended to prohibit only "testimonial compulsion." See Comment, Admissibility and Constitutionality of Chemical Intoxication Tests, 35 Tex.L.Rev. 813, 822 (1957). In 1940, approximately six months prior to the *Apodaca* decision, the court, in Ash v. State, 139 Tex.Cr.R. 420, 141 S.W.2d 341 (Tex.Cr.App.1940), upheld the conduct of police officers who had administered an enema to a defendant, who had swallowed two rings upon his arrest, despite his protests. The court found no "unreasonable search and seizure" contrary to then Article 727a, Vernon's Ann.C.C.P.1925. The opinion's tenor was clearly that the court would allow penetration of an accused's body in quest for incriminating evidence.

On appeal in *Apodaca*, however, the court held that all evidence of tests described should have been excluded. Citing only two general treatises as authority, the court stated the self-incrimination provision protected not only oral testimony, ". . . but embraces as well the furnishing of evidence by other means than by word of mouth, the divulging, in short, of *any fact which the accused has a right to hold secret*." (Emphasis added.) 146 S.W.2d at 382.

On rehearing, the court concluded:

"We think the safer policy to be adherence to the construction and application of Section 10, Article 1 of our Con-

stitution already given effect in our *long-established precedents*.

We are not inclined to enlarge upon accepted exemptions from the application of said provision of the Constitution." (Emphasis added.) 146 S.W.2d at 383.[31]

Dissatisfaction with *Apodaca's* restrictions soon become apparent. In Coleman v. State, 151 Tex.Cr.R. 582, 209 S.W.2d 925 (Tex.Cr.App.1948), it was held, as earlier noted in n. 20, that police action in taking scrapings from under the accused's fingernails for analysis did not violate the privilege. And, motion pictures taken of the accused without his consent at the police station while he was being charged with driving while intoxicated were permitted into evidence. Housewright v. State, 154 Tex.Cr.R. 101, 225 S.W.2d 417 (Tex.Cr.App.1950).[32]

Subsequently, in Jones v. State, 159 Tex.Cr.R. 29, 261 S.W.2d 161 (Tex.Cr.App.1952), cert. denied 346 U.S. 830, 74 S.Ct. 27, 98 L.Ed. 354, the Court, in dicta, indicated that the "walking test" and the urine specimen should have been treated differently. The court wrote:

". . . [T]he very logical opinion (Apodaca) overlooked making any distinction between the last named requirement [urine specimen] and those which caused him to perform acts which may be used to support opinions of his condition. . . ." 261 S.W.2d at 163.

The court noted that if there had been any point in discussing the difference, the distinguished judge who wrote the opinion would have, in all probability, followed the reasoning used in the *Ash* case (139 Tex.Cr.R. 420, 141 S.W.2d 341), "in which the mechanics used were merely for the purpose of obtaining proof of existing facts." 261 S.W.2d at 163.

---

31. It is observed that no case was cited by the court, and it would appear that the "long-established precedents" all had reached an opposite result.

32. Accord: Carpenter v. State, 169 Tex. Cr.R. 283, 333 S.W.2d 391, 394 (Tex.Cr. App.1960).

It has been said that *Jones*, in effect, limited *Apodaca* to its own fact situation and permits the making of a chemical test without the subject's consent (at least as far as the constitutional privilege against self-incrimination is concerned). See Comment, 35 Tex.L.Rev. 824 (1957). *Cf.*, however, Article 802f, Vernon's Ann.P.C., as amended.

And in Thomas v. State, 154 Tex.Cr.R. 367, 227 S.W.2d 810 (Tex.Cr.App.1950), it was held that no error was reflected in permitting an officer to testify as to the conduct of an accused charged with driving while intoxicated even though the officer related, ". . . I had him to [sic] walk." In what appeared to be an outright repudiation of *Apodaca*, the court said:

> ". . . If an officer should arrest a man at any place other than in his cell it would be presumed he would have him to walk and we see no reason why he would not be permitted to observe that walk and testify as to the results. The many cases of foot prints, finger prints, etc., are in point." 227 S.W.2d at 810–811.

See also Skaggs v. State, 167 Tex.Cr.R. 254, 319 S.W.2d 310, 313 (Tex.Cr.App. 1958); Clifford v. State, 372 S.W.2d 679 (Tex.Cr.App.1963). *Cf.*, e. g., Millican v. State, 143 Tex.Cr.R. 115, 157 S.W.2d 357 (Tex.Cr.App.1942); Ward v. State, 160 Tex.Cr.R. 232, 268 S.W.2d 465 (Tex.Cr. App.1954).

Still later, a doctor was allowed to testify after examining an accused's tongue, against his will, to determine if the tongue had been bitten. The victim of rape had informed the police she had bitten her assailant's tongue. Richardson v. State, 159 Tex.Cr.R. 595, 266 S.W.2d 129 (Tex.Cr.

App.1954), n. 19. And, in the same year, the court permitted evidence resulting from a paraffin test to which the accused had been subjected without his consent. Henson v. State, 159 Tex.Cr.R. 647, 266 S.W.2d 864 (Tex.Cr.App.1954), n. 21.[33]

Next, we turn to Beachem v. State, supra,[34] also relied upon by the appellant. In *Beachem*, a robbery had occurred in which the assailant had uttered certain words to the victim. When identification at a line-up could not be made by the victim without hearing the suspect's voice, an officer instructed Beachem to speak the specific words the assailant had used. These specific words formed the basis for a positive identification at the line-up, and, subsequently, in court.

The cornerstone of the opinion on original submission holding that the voice samples were taken in violation of Article I, § 10, was the premise that the said provision guarantees to an accused the right to ". . . refrain from giving testimony which will tend to reveal his criminal connection with an offense. . . ." 162 S. W.2d at 708. The only authority cited for this sweeping generalization was 44 Tex. Jur. § 25.

Then, the court, in an attempt to reconcile the "apparent conflicts" in the cases and rationally distinguish footprints, fingerprints, and other physical examinations from voice samples, wrote:

> ". . . [T]he evidence there involved was not *produced by the accused*, that is, by the *independent act or volition of the accused*, but was produced by, and was the result of, the acts of the officers or others. . . . The determining factor in this case is whether the evidence

---

33. The court wrote that it was dealing with ". . . that character of evidence referred to as real as distinguished from oral. The finding of nitrates upon the hand of appellant as a result of applying the paraffin was but revealing that which could not be altered, changed, or colored

by oral testimony." Is there a valid distinction with regard to the self-incrimination privilege between testing for nitrates on the skin and testing for alcohol in the blood?

34. Noted in 21 Tex.L.Rev. 816 (1943).

**768**

which incriminates the accused was produced by him or by the officers." 162 S.W.2d at 709 (Emphasis added.)

There was, the court concluded, no "legal distinction" which would make *Apodaca* inapplicable because the evidence obtained there [the urine specimen] "required the exercise of his volition." Id. at 709.[35]

The holding in *Beachem* was almost immediately diluted by the opinion on rehearing where the court, speaking through Presiding Judge Hawkins, reached the same result, but on a totally separate ground—a violation of the confession statute, then Article 727, Vernon's Ann.C.C.P. 1925,[36] although not repudiating the principle of law relied upon in the earlier opinion.[37]

The authoritativeness of the opinion on original submission has been seriously eroded by later decisions.[38]

In Lucas v. State, 160 Tex.Cr.R. 443, 271 S.W.2d 821, 823 (Tex.Cr.App.1954), *Beachem* was read narrowly where the question was whether requiring a suspect to stand, turn around, speak his name and address in the presence of prosecutrix at a line-up was a violation of the Texas privilege. Emphasizing that in *Beachem* the witness could identify the suspect only after she heard his voice, the court pointed out there was no showing that the in-court identification turned on voice recognition. There, the court, speaking through Judge Morrison, said:

". . . We do not think the Beachem case is here controlling, for many reasons *which we feel it is unnecessary to discuss*, but if it were it would still be incumbent upon the accused to show that his vocal utterances were in fact used against him by the witness in making her identification. It is not the fact that an accused is required to give evidence against himself that violates the constitutional inhibition; it is the use of such evidence to convict him that causes a reversal. . . ." 271 S.W.2d at 823. (Emphasis added.)[39]

Later, in Gage v. State, 387 S.W.2d 679 (Tex.Cr.App.1964), the court explicitly recognized its "reluctance to extend" *Beachem* and *Apodaca*. Gage was forced to give

35. ". . . If this distinction between active and passive conduct by the accused were applied to chemical intoxication tests, the logical conclusion would be that submission to a blood test could be compelled, but not to a urine or breath test. But a meaningful justification for the active-passive distinction, followed in a minority of jurisdictions, is difficult to ascertain." Comment, 35 Tex.L.Rev. 813, 823–24 (1957).

36. Of course, the use of the self-incrimination privilege and the confession statute in close relation was not unprecedented. See Stanton v. State, 94 Tex.Cr.R. 366, 252 S.W. 519 (Tex.Cr.App.1923); n. 27.

37. The court on rehearing wrote: "Possibly because of the manner in which the question was presented on original submission the writer of the original opinion based it largely on the proposition that appellant was forced to give evidence against himself. That question, under the facts here present, is so closely related and interwoven with a violation of our statute on confessions (Art. 727, C.C.P.)

as to make both principles of law applicable. The present writer has preferred to discuss the incident complained of from the viewpoint of a violation of said Art. 727." 162 S.W.2d at 711.

38. Note that in Coleman v. State, 151 Tex.Cr.R. 582, 209 S.W.2d 925, 927 (Tex.Cr.App.1948), *Beachem* was distinguished and held inapplicable to the paraffin test in Henson v. State, 159 Tex.Cr.R. 647, 266 S.W.2d 864, 868 (Tex.Cr.App.1954). See also Skaggs v. State, supra; Thomas v. State, supra; Clifford v. State, supra.

39. See Ramon v. State, 162 Tex.Cr.R. 365, 285 S.W.2d 225 (Tex.Cr.App.1955) (no violation of the privilege where defendant's identification was not ". . . predicated upon any particular words or statements but upon hearing him conversing with another person.") 285 S.W.2d at 226; Johnson v. State, 167 Tex.Cr.R. 53, 318 S.W.2d 76 (Tex.Cr.App.1958) (defendant required to repeat specific words but waived any objection by raising the matter after taking the stand).

fingerprints over counsel's objection during the day of trial. Finding no violation of the Texas privilege, Judge Morrison, writing for the majority, said:

"This court has in the past *demonstrated its reluctance* to extend the rules announced in Beachem . . . and Apodaca . . . as appellant would have us do in the case at bar. . . ." 387 S.W.2d at 681. (Emphasis added.)[40] The court seemed to recognize that *Beachem* and *Apodaca* were aberrations in Texas law.

And, finally in Lee v. State, 455 S.W.2d 316 (Tex.Cr.App.1970), it appears that *Beachem* was all but limited to its exact facts. In *Lee*, the defendant was identified after prosecutrix overheard him speak in the jail. In finding no error, the court cited *Gilbert* and distinguished *Beachem*, saying,

". . . It is not shown that appellant was required to say anything or *any particular words* which he had said during the commission of the crime as was discussed by this Court in Beachem v. State, . . ." 455 S.W.2d at 319. (Emphasis added.)[41]

Thus, it would appear that *Beachem* has been expressly limited in two important ways: (1) it applies only where the specific words spoken during the commission of a crime are compelled for identification purposes; and (2) where the utterance of such specific words plays a critical part in the identification process.[42]

Trammell v. State, supra, is the other significant authority on which appellant relies. *Trammell's* genesis can be traced to a series of cases holding that an accused could waive his rights under the Texas privilege by consenting to giving a urine specimen,[43] breath test,[44] or blood test.[45]

40. Judge McDonald dissented and commented: "I do not think that this Court would be extending the rule in Beachem . . . and in Apodaca . . . by following these precedents in the case at bar. . . .
   "It is apparent to me that the appellant, Apodaca and Beachem all three were required to perform acts which incriminated them. It seems to me that the case at bar falls squarely within the rule announced in these two cases. It does not seem to me that this Court should entertain a reluctance to extend these rules announced, as Judge Morrison points out.
   "This Court should either follow these two cases, or it should overrule them." 387 S.W.2d at 682. *Cf.* n. 16.

41. See also Taylor v. State, 474 S.W.2d 207, 211 (Tex.Cr.App.1972), in which it was stated that *Beachem* had been "severely criticized."

42. To show that *Beachem* is nearly alone in its holding, see Annot., Requiring a Suspect or Defendant in Criminal Cases to Demonstrate Voice for Purposes of Identification, 24 A.L.R.3d 1261 (1969); 1 McCormick & Ray, Evidence § 431, p. 364.
   The most complete argument for the *Beachem* rule is found in Weintraub, supra n. 85, where the author argues that the privilege covers only evidence which

the accused can deliberately falsify. See also the dissent in State v. Fisher, 242 Or. 419, 410 P.2d 216, 217 (1966). However, the "continued viability of this rationale after *Wade* and *Gilbert* is doubtful." The Supreme Court, 1966 Term, 81 Harv.L.Rev. 69, 116 (1967). The argument of Weintraub is also criticized in People v. Ellis, 65 Cal.2d 529, 55 Cal. Rptr. 385, 421 P.2d 393, 395 at n. 4 (1966).
   Biggers v. State, 219 Tenn. 553, 411 S.W.2d 696 (1967), aff'd by an equally divided court, 390 U.S. 404, 88 S.Ct. 979, 19 L.Ed.2d 1267 (1968), held that requiring a voice test, even in the identical words alleged to have been used in the crime does not constitute requiring an accused to "give evidence against himself."
   See also, Annot., Requiring Submission to Physical Examination or Test as Violation of Constitutional Rights, 25 A.L.R. 2d 1407 (1952); same subject on federal rights, 16 L.Ed.2d 908 (1967), supplemented in 22 L.Ed.2d 909 (1970).

43. Halloway v. State, 146 Tex.Cr.R. 353, 175 S.W.2d 258 (Tex.Cr.App.1943).

44. McKay v. State, 155 Tex.Cr.R. 416, 235 S.W.2d 173 (Tex.Cr.App.1950); Jones v. State, 159 Tex.Cr.R. 29, 261 S.W.2d 161 (Tex.Cr.App.1952).

45. Bryant v. State, 159 Tex.Cr.R. 98, 261 S.W.2d 728 (Tex.Cr.App.1953).

But *Trammell's* immediate antecedent was Brown v. State, 156 Tex.Cr.R. 144, 240 S. W.2d 310 (Tex.Cr.App.1951). *Brown* involved a prosecution for driving while intoxicated in which the defendant was arrested, taken to a hospital, and a blood specimen was extracted *with his consent.* The conviction was reversed on the ground that there had been a break in the chain of custody of the blood specimen.

In what was clearly dicta, Judge Woodley continued and announced the following principles:

"When so taken by competent and trained nurses, doctors or laboratory technicians *with the consent of one* whose state of sobriety is questioned, the results of the test thereof may be shown by the state or by the accused. *Consent being shown,* the provisions of the 5th Amendment to the Constitution of the United States and Art. I, Sec. 10 of the Constitution of Texas . . . are *not violated* in the taking of blood for analysis, and the proof of the result of the test." 240 S.W.2d at 311 (Emphasis added.)[46]

In *Trammell,* the driver had been taken to a hospital after being involved in a serious accident, and a blood sample was taken while he was unconscious.[47] Objection was made at the trial for driving while intoxicated that no consent had been shown before the specimen of blood had been removed.

The opinion of the court began by quoting Brown v. State, supra, to the effect that where taken under proper conditions

". . . with the consent of one whose state of sobriety is questioned . . . [and] [c]onsent being shown, the provisions of . . . Art. I, Sec. 10 of the Constitution of Texas . . . are not violated . . . ." 287 S.W.2d at 488.

Then, without citation of any authority other than *Brown,* the opinion concluded:

"The State having failed to show that the specimen was taken with the consent of the appellant, the testimony of Dr. Mason was not admissible." Id. at 488.[48]

While the language of *Brown* was most persuasive, the case was not actually in point since Brown consented to the test and his conviction was reversed because the prosecution failed to establish a sufficient chain of custody as to the blood test. See Comment, 35 Tex.L.Rev. 813, 825 (1957).

The privilege of self-incrimination was not discussed in the opinion and neither *Beachem* nor *Apodaca* was mentioned though it has been claimed that *Trammell* heralded a return to *Apodaca.* See Comment, 35 Tex.L.Rev. 813, 825 (1957).

Further, it has been repeatedly noted that blood tests do not involve "volitional participation." 1 McCormick & Ray, Evidence, § 126, p. 25; Weintraub, Voice Identification, Writing Exemplars, and the

**46.** Accord: Marshall v. State, 159 Tex. Cr.R. 268, 262 S.W.2d 491 (Tex.Cr.App. 1953) (no self-incrimination violation where consent is shown: blood test).

**47.** *Cf.* Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957), where under similar circumstances it was held that the conviction based on the results of a blood test made while the accused was unconscious did not deprive him of his liberty without due process.

**48.** Consistent with the holding of *Trammell* is the rule that testimony cannot be introduced or comment made on an accused's refusal to take a blood test.

Watts v. State, 167 Tex.Cr.R. 63, 318 S.W.2d 77 (Tex.Cr.App.1958); Shilling v. State, 434 S.W.2d 674, 675 (Tex. Cr.App.1968) (post *Schmerber*); Cardwell v. State, 156 Tex.Cr.R. 457, 243 S.W.2d 702, 703 (Tex.Cr.App.1951).

While *Trammell* means that the state had the affirmative burden of showing consent as a predicate for introducing the results of the blood test, it has been held that the blood test is admissible where there is no objection. Barker v. State, 169 Tex.Cr.R. 277, 334 S.W.2d 182 (Tex. Cr.App.1960); Trotter v. State, 471 S.W. 2d 822 (Tex.Cr.App.1971) (evidence of refusal to the blood test not error where no objection).

Privilege Against Self-Incrimination, 10 Vanderbilt L.Rev. 485, 499, n. 5; Comment, 35 Tex.L.Rev. 813, 824 (1957).

It may well be questioned whether *Trammell* was correctly decided in holding that consent is essential to the giving of a valid blood test. It would not appear that Article I, § 10, of the state constitution requires such consent, and the Fifth Amendment does not where the taking of the sample comports with due process. Schmerber v. California, supra. Nevertheless, *Trammell* is a widely accepted decision and the court has adhered to *Trammell* even after *Schmerber* placed blood tests without consent beyond the pale of the Fifth Amendment.[49] In such cases more attention was given to the factor that this court may require stricter safeguards for the protection of rights than the Supreme Court in its construction of the federal constitution. No in-depth re-consideration of *Trammell* was undertaken.

And the Legislature has, of course, now provided for implied consent of a motorist for the taking of a breath test for intoxication, but has provided that in the taking of all other chemical tests to determine the alcoholic content of the blood there is no implied consent though the motorist "may consent." See Article 802f, Vernon's Ann.P.C.

As to appellant's cited case of *Apodaca*, it is noted, as earlier observed, that its holding has been almost completely eroded by subsequent decisions of this court. This court and most other jurisdictions have not followed *Apodaca*,[50] and we expressly overrule it.

Although *Beachem* has been severely limited by subsequent decisions, the principles announced therein extended the Texas privilege to any incriminative evidence obtained from an accused which required his "volitional" participation. After detailed research relating to Article I, § 10, in particular, and the privilege, we have concluded the *Beachem* "volitional participation" standard was overly expansive and without adequate support in history, precedent or logic. We expressly overrule it.

Under the common law process as it exists today, even constitutional principles do not emerge as full-blown eternal truths, thus remaining immutable and immune from the process of change. Frequently courts announce a broad generalization which is, over a period of time, qualified and narrowed until its authoritativeness has been vitiated. Having failed the test of experience, the rule is finally and fully abandoned by being expressly overruled.[51]

Likewise, for the reasons stated above, we conclude that *Trammell* was erroneously decided, and conclude that compelling a blood test, if taken under conditions which comport with due process, does

49. See, e. g., Hearn v. State, 411 S.W.2d 543, 545 (Tex.Cr.App.1967) (dicta); Shilling v. State, supra. See also Attorney General's Opinion No. C–766 (1966). Cf. Ballard v. State, 450 S.W.2d 83 (Tex. Cr.App.1970).

50. The following cases declined to follow *Apodaca*: State v. Faidley, 202 Kan. 517, 450 P.2d 20, 24 (1969); State v. Smith, 8 Terry 334, 91 A.2d 188 (Del. Super.1952).

The Oklahoma cases are perplexing. First, in Alexander v. State, 305 P.2d 572, 583 (Okl.Cr.1956), the court criticized *Apodaca* and said that the cases in the digests cited gave "scant comfort" to the result reached in *Apodaca*. But, then in Cox v. State, 395 P.2d 954 (Okl.Cr.

1964) (blood test) and Spencer v. State, 404 P.2d 46 (Okl.Cr.1965), *Apodaca* was cited with approval. However, in Smith v. State, 462 P.2d 328, 330 (Okl.Cr. 1969), the court held writing samples as not violative of the Oklahoma Constitution with no mention of *Cox* or *Spencer*.

51. For other examples in which Texas law has been more or less abruptly changed, see Martin v. State, 475 S.W.2d 265 (Tex.Cr.App.1972); Haynes v. State, 475 S.W.2d 739 (Tex.Cr.App.1972); King v. State, 473 S.W.2d 43 (Tex.Cr. App.1971); Middleton v. State, 476 S.W. 2d 14 (Tex.Cr.App.1972); Jones v. State, 481 S.W.2d 900 (Tex.Cr.App. 1972).

not constitute requiring an accused to "give evidence against himself." [52]

As earlier noted, the Legislature has recently acted in this area. Article 802f, Vernon's Ann.P.C., as amended (Acts 1971, 62nd Leg.R.S., ch. 709, p. 2340, effective June 7, 1971). Even though the overruling of *Trammell* may have removed a constitutional impediment of consent as to the taking of a blood test or other chemical tests, this does not obviate the necessity of compliance with statutory provisions, even though statutory requirements may not now be constitutionally required. [53]

Even the overruling of *Apodaca, Beachem,* and *Trammel* will not entirely eliminate the maze of uncertainty that clouds the scope of the privilege. Many cases are in conflict and to attempt to reconcile all of them may lead to more confussion, not less. We shall not attempt to do so.

After much study and research, we conclude that Article I, § 10, is declaratory of the common law, and that it was the intent of the framers of our constitutional privilege to provide the citizens of this state with a safeguard similar to that contained in the Fifth Amendment. We adopt the view that the Texas constitutional self-incrimination privilege extends its protection to testimonial compulsion. [54]

This view has overwhelming precedential support, even in states with similar constitutional provisions. [55]

Accordingly, we hold that compelling a handwriting exemplar or sample does not constitute compelling an accused to "give evidence against himself" in violation of Article I, § 10, of the Texas Constitution.

*Appellant's contention is without merit.*

For reasons stated, appellant's motion for rehearing is overruled.

---

52. State v. Dugas, 252 La. 345, 211 So.2d 285, 289 (1968) (alternative holding), cert. denied 393 U.S. 1048, 89 S.Ct. 679, 21 L.Ed.2d 691 (1969); Davis v. State, 189 Md. 640, 57 A.2d 289, 291 (Md.App. 1948); Gardner v. Commonwealth, 195 Va. 945, 81 S.E.2d 614, 617–618 (1954); State v. Sturtevant, 96 N.H. 99, 70 A.2d 909 (1950).

At present, the only state clearly to the contrary as to the scope of the phrase "to give evidence" with respect to blood tests is Oklahoma. Lorenz v. State, 406 P.2d 278 (Okl.Cr.1965).

In two other states, there is only the weakest dicta, but no holdings, indicating that the state constitutional provision "to give evidence" might be more narrow than *Schmerber.* State v. Stevens, 252 A.2d 58, 60–61 (Me.1969); Washburn v. Commonwealth, 433 S.W.2d 859, 861 (Ky.1968).

See generally Slough and Wilson, Alcohol and the Motorist: Practical and Legal Problems of Chemical Testing, 44 Minn.L.Rev. 673, 685–89 (1960); 21 Am.Jur.2d Criminal Law § 364 (1965).

53. See, e. g., Commonwealth v. Scott, 269 N.E.2d 454 (Mass.1971); State v. McCarthy, 259 Minn. 24, 104 N.W.2d 673, 677–678 (1960); State v. Severson, 75 N.W.2d 316 (N.D.1956); State v. Werlinger, 84 S.D. 282, 170 N.W.2d 470 (1969).

54. In 8 Wigmore, Evidence § 2265, p. 386 (McNaughton rev. 1961), it is stated that " . . . [u]nless some attempt is made to secure a communication—written, oral or otherwise—upon which reliance is to be placed as involving his consciousness of the facts and the operations of his mind in expressing it, the demand made upon him is not a testimonial one. . . . "

55. State v. Durrant, 188 A.2d 526, 528 (Del.1963); State Thompson, 256 La. 934, 240 So.2d 712, 713 (1970); Smith v. State, 462 P.2d 328, 330 (Okl.Cr. 1969).

See also Lewis v. United States, 127 U.S.App.D.C. 269, 382 F.2d 817, 818–819 (1967); Granza v. United States, 381 F.2d 190 (5th Cir. 1967), cert. denied 389 U.S. 939, 88 S.Ct. 291, 19 L.Ed. 2d 292 (1967); State v. Sneed, 78 N.M. 615, 435 P.2d 768 (1967).

In Alabama the cases appear to construe the phrase "to give evidence" broadly. See, e. g., Smith v. State, 247 Ala. 354, 24 So.2d 546, 549 (Ala. 1946), and Hunt v. State, 248 Ala. 217, 27 So.2d 186, 193–194 (Ala.1946). However, the Alabama Supreme Court has recently impliedly indicated that these older precedents will no longer be followed. Hubbard v. State, 283 Ala. 183, 215 So.2d 261 (1968).

MORRISON, Judge (concurring in part and dissenting in part).

I concur with my brother Onion in all aspects save one.

While the intent of the framers of the Texas Constitution regarding Art. I, Sec. 10, is unknown, the interpretation of that provision is a judicial function and, as my brother Onion acknowledges, a State may surpass minimum federal constitutional requisites. At the time I prepared the opinion for this Court in Trammell v. State, supra, I was fully cognizant of the far-reaching implications to be drawn therefrom. I remain convinced that a taking of blood from an individual without his consent constitutes a violation of his right of privacy and involves an infringement of an accused's right to be free from self-incrimination under Art. I, Sec. 10, Texas Constitution.

Further, overruling Trammell, supra, is entirely unnecessary in order to reach the result which Judge Onion's opinion concludes is a proper disposition of this case. This case deals with a taking of a handwriting exemplar while Trammell dealt directly with an invasion of the privacy of the accused person.

I dissent to overruling Trammell v. State, supra.